Albert NEUMANN, et al., Appellants,

v.

Henri VIDAL, et al.

No. 82–1685.

United States Court of Appeals, District of Columbia Circuit.

Argued March 11, 1983.

Decided June 21, 1983.

---

Robert A. Taylor, Jr., with whom Michelle A. Parfitt and James M. Hanny, Washington, D.C., were on brief, for appellants.

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

Robert S. Swecker, with whom Regis E. Slutter and Richard McMillan, Jr., Washington, D.C., were on brief, for appellees.

Before ROBINSON, Chief Judge, WILKEY, Circuit Judge, and GORDON,* Senior District Judge for the Western District of Kentucky.

Opinion for the Court filed by Senior District Judge GORDON.

JAMES F. GORDON, Senior District Judge:

This appeal challenges a summary judgment entered by the district court dismissing allegations of abuse of process and anticompetitive acts proscribed by the Clayton Act and the Sherman Antitrust Act (15 U.S.C. § 15 (1976) and 15 U.S.C. §§ 1, 2 (1976)). The parties are rival developers of designs for earth retaining walls used near highways and other structures. We hold that appellants did raise genuine issues as to material facts, looking at the record in the light most favorable to the non-movant. We therefore must reverse and remand this action, Fed.R.Civ.P. 56; *Habib v. Raytheon*, 199 U.S.App.D.C. 11, 616 F.2d 1204 (1980). After summarizing the background of this suit, we set forth for the district court's guidance some of the issues which preclude summary judgment.

## BACKGROUND

Albert Neumann studied mechanical engineering in Chile, and was an engineer there for nearly thirty years before emigrating to the United States in 1964. For the next dozen years, he worked for several companies, including one he established himself, doing designing and drafting work. One of the customers for whom Neumann worked as an independent draftsman was the Reinforced Earth Company (RECO), which had been established in 1971 by appellee Henri Vidal. RECO was the licensee in this country of a retaining wall system developed by Vidal in the early 1960's.

In March, 1976, Neumann decided that he could build a better retaining wall system. The following month, he told RECO's chief engineer that he would soon stop designing and drafting for RECO, and in May, 1976, he retained a patent attorney. The attorney filed an application for Neumann's system with the United States Patent and Trademark Office.

Over the next year, Neumann contacted his neighborhood bank and the Community Enterprise Development Agency (CEDA) in unsuccessful efforts to obtain financing through Small Business Administration loans. At first, Neumann sought between $150,000 and $160,000, but as time went by he pared his request to $30,000. On April 19, 1977, a CEDA official wrote that because Neumann had changed his request to $30,000, "there is more possibility of your getting the loan."[1]

Then things began to go awry. Having learned from a trade magazine article about Neumann's patent plans and a demonstration wall he'd built, RECO sued Neumann in Maryland federal court on February 25, 1977. RECO alleged misappropriation of trade secrets, trademark infringement, unfair competition, and breach of fiduciary relationship. The Maryland litigation ended in June, 1978, with an opinion following a three-day trial that, as the district court below observed, "generally vindicated Neumann."[2] Nonetheless, RECO successfully obtained an injunction forbidding Neumann and his company, Columbia Engineering Services, Inc. (CES), from using or disclosing RECO's trade secrets,—even though the Maryland court found that he had never done those things before.

In the meantime, interested investors had apparently become reluctant to get involved while litigation was pending, and had withdrawn. Also, the administrative consideration of Neumann's patent had become snarled because of procedural tangles and disputes between the parties. Neumann

did finally receive his patent on July 27, 1982, but not until the Patent and Trademark Office had disposed of RECO's Protest Against Issuance, Request for Reconsideration, and additional allegations of fraud.

Neumann and CES filed this action on January 25, 1981. The original complaint contained seven counts, five of which sought relief under antitrust laws and two of which alleged common law malicious prosecution and abuse of process. On July 2, 1981, the District Court for the District of Columbia granted RECO's motion for summary judgment on one of the antitrust claims (concerted refusal to deal) and on the malicious prosecution claim. After subsequent discovery, the district court entered another summary judgment dated May 27, 1982, which is the subject of this appeal. That decision barred the plaintiffs from raising the abuse of process claim for estoppel and res judicata reasons, and dismissed the remaining antitrust claims because Neumann and CES lacked standing under section four of the Clayton Act.

### THE ANTITRUST CLAIMS

Neumann and CES alleged that RECO's interference with the marketing of Neumann's retaining wall system created standing under the Clayton Act, 15 U.S.C. §§ 12–27 (1976). Under the Act, "[a]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court ...." 15 U.S.C. § 15. Although Neumann and CES have never sold any retaining walls, they alleged that they could still meet the legal requirements for standing because they could demonstrate their intention and preparedness to enter the market. *Martin v. Phillips Petroleum Co.*, 365 F.2d 629 (5th Cir.), *cert. denied*, 385 U.S. 991, 87 S.Ct. 600, 17 L.Ed.2d 451 (1966); *Hecht v. Pro-Football, Inc.*, 187 U.S.App.D.C. 73, 570 F.2d 982 (1977), *cert. denied*, 436 U.S. 956, 98 S.Ct. 3069, 57 L.Ed.2d 1121 (1978). As previously dis-

1. Letter from CEDA finance and bonding specialist Mary S. Joyce to Albert Neumann (April 19, 1977), *reprinted in*, Appellants' Record Excerpts at 3.

2. *Neumann v. Vidal*, No. 81–0459, slip op. at 8 n. 6 (D.D.C. May 27, 1982).

cussed by Judge Wilkey, "[i]ndicia of preparedness include adequate background and experience in the new field, sufficient financial capability to enter it, and the taking of actual and substantial affirmative steps toward entry, 'such as the consummation of relevant contracts and procurement of necessary facilities and equipment.'" *Hecht,* 570 F.2d at 994 (footnotes omitted).

The district court correctly examined the standing issue within this legal framework, but we cannot agree with the court's conclusion that Neumann and CES failed to raise genuine issues of fact concerning Neumann's preparedness. Beginning with the first element—Neumann's background and experience—the district court stated that "the facts do not establish that Neumann had the requisite experience to successfully manage his corporation."[3] This determination, however, should have been reserved for the factfinder at trial. Neumann had some experience operating a business: he appears to have been successful as an independent businessman for several years before he decided to market a new retaining wall system. Also, as a contractor working for RECO and as an engineer for many years before then, Neumann had become well-acquainted with the needs of a retaining wall business. In fact, Neumann persuasively argues that RECO should not be heard to challenge his background and experience, if only because RECO itself gave him so much responsibility when he worked there.[4]

Similarly, the district court should have deferred until trial any determination that Neumann "had neither enough money to finance the business himself nor an investor willing and able to provide necessary capital."[5] Despite the district court's definitive statement, Neumann did submit affidavits from specific investors strongly suggesting that but for RECO's litigation, they would have energetically pursued financing possibilities with Neumann.[6] Moreover, the district court failed to recognize that Neumann had reduced his initial estimate of his business need from upwards of $150,000 down to $30,000.[7] This, taken with the CEDA official's letter, plainly created a triable issue as to Neumann's financial prospects.

Finally, the district court's ruling that Neumann and CES lacked standing to sue

---

**3.** *Id.* at 5.

**4.** The district court also seems to have misinterpreted a reference to Neumann's experience made in a Business Evaluation Summary that appellants commissioned from a management consulting firm. The firm's report noted that "[m]ost of his [Neumann's] experience in managing a business was acquired in the enterprise." The district court interpreted "the enterprise" as a reference to the retaining wall business. *Id.* The court then commented that "[b]ecause the business has never gotten started, it is difficult to see how this 'experience' prepared him for running a successful enterprise." *Id.* Especially when viewed in the light most favorable to Neumann and CES, however, it is likely that the consulting firm's report was referring to a drafting and engineering corporation Neumann had been running since 1974. This enterprise grossed $54,166.08 in 1976 and 1977 combined, as the district court noted. *Id.*

**5.** *Id.*

**6.** For example, Neumann submitted an affidavit from the vice president of a sizeable corporation, who stated that had it not been for

RECO's Maryland lawsuit, his corporation would likely have invested in CES. Yet the district court concluded that:

> Close attention to the affidavit, however, reveals that the plans for the marketing of Neumann's wall never reached the point of certainty: "I am able to say that if we had been able to finalize our arrangements, there is no question in my mind that Dur-O-Wal would have provided the financing necessary to market TRES." *Id.* The plans were never finalized, and no contract was signed or orally agreed to.

*Neumann v. Vidal,* slip op. at 5. We think the court's narrow interpretation of Neumann's evidence was premature, however. As Chief Judge Robinson has written, "[t]he summary judgment procedure is properly and wholesomely invoked when it eliminates a useless trial, but, of course, not when it would cut a litigant off from his right to have a jury resolve a factual issue bearing significantly on the outcome of the litigation." *Bloomgarden v. Coyer,* 156 U.S.App.D.C. 109, 114, 479 F.2d 201, 206 (1973).

**7.** *See id.* ("[I]t is undisputed that Neumann needed at least $150,000 in initial capital to start up his business.")

was inappropriate in view of the steps appellants had taken toward entering the retaining wall business. Neumann not only engaged counsel and filed a successful patent application, but he also employed a public relations specialist to help market his system through advertisements and brochures. In addition, several years before bringing this suit Neumann spent thousands of dollars erecting the first of two demonstration retaining walls. Further, he hired a professional engineer to perform structural tests on that wall. Lastly, Neumann arranged for an article in a regional trade magazine about his demonstration wall which apparently was favorable enough to prompt RECO's suit in Maryland federal court.

### The Abuse of Process Claim

Neumann and CES also alleged that RECO abused the procedures of the Maryland court and the U.S. Patent and Trademark Office in order to block CES from competition. Ultimately, of course, the resolution of an abuse of process claim is premised on intention and is peculiarly fit for a factfinder at trial. But the district court dismissed this claim on several alternative res judicata and estoppel grounds. We reverse these aspects of the district court's ruling as well.

■ In the District of Columbia, the tort of abuse of process is differentiated from "malicious use of process." Abuse of process occurs when there is a "perversion of court processes to accomplish some end which the process was not intended by law to accomplish, or which compels the party against whom it has been used to do some collateral thing which he could not legally and regularly be compelled to do." *Hall v. Field Enterprises, Inc.,* 94 A.2d 479, 481 (D.C.Mun.Ct.1953). This means that an abuse of process action can be maintained even where the earlier suit was ostensibly legitimate, so long as the reasons for the suit are found illegitimate. The "action will lie even though the process has been

validly issued, and regardless of whether there was any probable cause of its issuance ..." *Id.; Wilcon v. Travelers Indemnity Co.,* 654 F.2d 976, 983–84 (5th Cir.1981). *Compare, Alexander v. Unification Church of America,* 634 F.2d 673, 677 n. 7 (2d Cir.1980) (for a party to maintain a "malicious use of process" suit, he or she must have gotten a favorable result in the earlier proceeding).

■ Because of this distinction, Neumann and CES are not barred from raising their abuse of process claim, as the district court believed, simply because RECO successfully obtained an injunction in Maryland federal court. Instead, the question still to be resolved is whether the Maryland suit and the patent office pleadings were essentially designed "to accomplish some end which the process was not intended by law to accomplish"—such as frightening off Neumann's investors or delaying his getting underway.

■ Nor should Neumann and CES have been barred from raising their abuse of process claim because of the res judicata doctrine. Although the district court stated that the Maryland judge already had "considered the abuse of process and malicious prosecution claims," there is in fact no evidence that the parties had a full and fair opportunity to litigate those claims. Instead, it appears that the Maryland judge stayed and ultimately dismissed those claims without prejudice. Moreover, the Maryland court could not possibly have considered the later challenges Neumann and CES raised about the administrative roadblocks RECO mounted before the patent office.

■ Finally, we cannot agree with the district court's invocation of equitable estoppel principles to prevent Neumann and CES from raising their abuse of process claim.[8] The district court concluded that Neumann and CES were chiefly responsible for the particular steps RECO took in protesting Neumann's patent application. Based on that conclusion, the district court proceeded to bar Neumann and CES from

---

**8.** "[E]quitable estoppel may be applied to preclude a party from contradicting testimony or pleadings successfully maintained in a prior judicial proceeding.... The party seeking

challenging the protest strategy altogether. But even assuming that appellants were responsible for how RECO pursued its strategy, the court reached its conclusion about appellants' role only after sifting through conflicting assertions and affidavit testimony, and only after resolving genuine issues of fact which should have precluded summary judgment.

More fundamentally, following remand the district court should recognize that Neumann's abuse of process claim is not based on the particular steps RECO took. Rather, appellants' claim is based on the overall legitimacy of RECO's strategy of challenging Neumann's patent. Neumann contends that RECO's reasons were unfounded, and of course RECO did ultimately lose. It is hard to see how equity could be served by preventing appellants from challenging RECO's strategy.

*Reversed and Remanded for Further Proceedings.*

to invoke the estoppel, however, must have been an adverse party in the prior proceeding, must have acted in reliance upon his opponent's prior position, and must have acted in reliance upon his opponent's prior position, and must now face injury if a court were to permit his opponent to change positions.... As Professor Pomeroy states, the rule's object is to prevent the unconscientious and inequitable assertion or enforcement of claims or rights which might have existed or been enforceable by other rules of law, unless prevented by the estoppel."
*Konstantinidis v. Chen,* 626 F.2d 933, 937 (D.C. Cir.1980).