John DOE, Plaintiff,

v.

Joseph DiGENOVA, et al., Defendants.

Civ. A. No. 82–0025.

United States District Court, District of Columbia.

July 29, 1986.

Michael A. Lubin, Washington, D.C., for plaintiff.

Charles Flynn, Asst. U.S. Atty., Washington, D.C., for defendants.

## MEMORANDUM

GASCH, Judge.

This case is on remand from the court of appeals. *See Doe v. DiGenova,* 779 F.2d 74 (D.C.Cir.1985). Currently before the Court are the parties' cross-motions for summary judgment.

## I. BACKGROUND

This case arises from a subpoena of plaintiff's claims file and medical records maintained by the Veterans Administration ("VA"). Plaintiff asserts that the disclosure of those records violated the Veterans' Records Statute, 38 U.S.C. § 3301, the D.C. physician-patient privilege, D.C.Code § 14–307, the D.C. Mental Health Information Act of 1980, D.C.Code § 6–2002(a), and the fourth amendment.[1] The amended complaint seeks declaratory and injunctive relief and an award of damages under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–2680.

The facts giving rise to this case may be briefly summarized. On October 22, 1981, Assistant United States Attorney David Stanley notified plaintiff that he was under investigation by a grand jury concerning allegations that he had fraudulently been paid unemployment benefits. At Stanley's suggestion, plaintiff and his court-appointed counsel met with Stanley on November 3, 1981. There Stanley described the evidence against plaintiff, offered a plea bar-gain, and attempted to enlist plaintiff's assistance in the grand jury investigation.

Without notice to plaintiff or his counsel, on November 3, 1981 Stanley also caused a grand jury subpoena to be issued to the Director of the VA which sought production of plaintiff's claims file, as well as "any medical records maintained for the claimant." The VA thereupon released plaintiff's records, which included information about plaintiff's psychiatric treatment at a VA clinic, to two Metropolitan Police Department officers. The VA's disclosure was made pursuant to two regulations. The first required that government records "shall be furnished in response to an official request, written, or oral," from an agency or department of the federal government. 38 C.F.R. § 1.506(a) (1984). The second regulation provided that VA records would be made available when "the process of a United States court requires the production" of such documents. *Id.* § 1.511(b).

When plaintiff's counsel learned of this disclosure, he informed Stanley that he believed that plaintiff's rights had been violated and threatened legal action unless the confidentiality of the records was protected. After an attempt at negotiating an agreement failed, plaintiff filed the instant suit. On February 26, 1982, this Court granted defendant's motion to dismiss the case as moot. The court of appeals reversed that decision and remanded the case for a determination on the merits. *Doe v. Harris,* 696 F.2d 109 (D.C.Cir.1982).

During discovery after the remand, Stanley stated that there were two reasons for issuance of the subpoena. First, the ongoing grand jury investigation indicated that certain employees of the District of Columbia Department of Employment Services, including plaintiff, had been causing computers to improperly issue benefits checks to themselves and their accomplices. The grand jury also learned that some of the

---

1. Plaintiff originally claimed that the disclosure also violated the fifth amendment and the sixth amendment. These claims were previously rejected by this Court, *see Doe v. DiGenova,* No. 82–0025, mem. at 8–9 (D.D.C. July 19, 1984), and were not appealed. *See Doe v. DiGenova,* 779 F.2d at 78.

checks issued to plaintiff had been negotiated at Riggs National Bank. A subpoena was then issued for the records of plaintiff's bank account. Those records revealed that plaintiff also had received and negotiated U.S. Treasury checks marked "VA Comp." In view of the nature of the grand jury's investigation of plaintiff's activities, Stanley then caused the VA subpoena to be issued so as to determine the nature of plaintiff's VA claim and whether it was fraudulent or legitimate.[2]

Stanley's second asserted reason for issuing the subpoena arose from his impression, formed after discussion with plaintiff and his counsel, that plaintiff might assert the insanity defense in any criminal prosecution. Stanley thus hoped "to ascertain whether such a defense might be available, and how strong such a defense might be, before deciding further on the course of any further investigation" of plaintiff.

After limited discovery was completed, the parties filed cross-motions for summary judgment and, on July 19, 1984, this Court granted defendants' motion. The Court first held that the VA's disclosure was permissible under the Veterans' Records Statute, 38 U.S.C. § 3301. The Court then concluded that, since the disclosure was authorized by federal statute, plaintiff had no cause of action under the FTCA. The Court also held that Stanley's issuance of the subpoena was reasonable and did not constitute an invasion of privacy. The Court further held that the D.C. Mental Health Information Act was not relevant to the case because the VA's disclosure was permissible under the Veterans' Records Statute. The D.C. physician-patient privilege was held to create only an evidentiary privilege that did not give rise to a separate cause of action. With respect to plaintiff's fourth amendment claims, the Court determined that, while plaintiff had a privacy interest in the VA records, the subpoena was reasonable and not overly broad. Plaintiff's constitutional right to privacy, recognized in *Whalen v. Roe*, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977), was held not violated because the disclosure caused by the subpoena was strictly limited. Finally, the Court concluded that no abuse of process had occurred. *See Doe v. DiGenova*, No. 82–0025 (D.D.C. July 19, 1984).

On appeal, the court of appeals ruled that the Veterans' Records Statute, as modified by the Privacy Act, 5 U.S.C. § 552a, did not permit disclosure of plaintiff's records. *Doe v. DiGenova*, 779 F.2d at 87. The court found that the grand jury subpoena was not an "order of a court of competent jurisdiction" for purposes of the Privacy Act, 5 U.S.C. § 552a(b)(11), because it was not "specifically approved by a court." 779 F.2d at 85. The disclosure also was not permitted as "required by any department or other agency of the United States government", 38 U.S.C. § 3301(b)(3), because a head of a federal agency had not made a written request for the records. 779 F.2d at 85 (citing 5 U.S.C. § 552a(b)(7)).

The court of appeals further determined that the disclosure was not made for a "routine use" under the Privacy Act because the routine use regulation cited by the government, 43 Fed.Reg. 44,743 (1978), was inapplicable. *See* 779 F.2d at 86. The court noted that a new routine use had been promulgated by the VA after the disclosure of plaintiff's records:

> Any information in this system may be disclosed to a federal grand jury ... in order for the VA to respond to and comply with the issuance of a federal subpoena.

**2.** This reason for the subpoena was disclosed in an affidavit by Stanley dated December 12, 1983. The affidavit was filed under seal due to concerns about protecting the secrecy of grand jury proceedings. The government later moved for court-ordered disclosure of the affidavit, but this Court ruled on the parties' cross-motions for judgment without ruling on the motion or considering the contents of the affidavit.

In *Doe v. DiGenova*, 779 F.2d at 91, the court of appeals remanded for a ruling on the motion to unseal. On April 18, 1986, pursuant to the agreement of the parties and upon this Court's determination that disclosure was proper under Fed.R.Crim.P. 6(e)(3)(C)(i) and *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979), the affidavit was unsealed.

47 Fed.Reg. 51,841 (1982). While this new regulation was not relevant to a determination of whether the Veterans' Records Statute authorized disclosure of plaintiff's records, the court stated that the new "routine use" would be "very relevant to Doe's request for injunctive and declaratory relief against further disclosure of his records pursuant to a grand jury subpoena." 779 F.2d at 86–87. While the court of appeals expressed no opinion on whether equitable relief was warranted, 779 F.2d at 87 n. 24, the court stated:

> If the district court determines that such equitable relief is appropriate, it will have to consider the validity and scope of the new routine use. We fully expect that the parties would, at that point, be given a full opportunity to brief and argue this issue.

779 F.2d at 87.

The court of appeals then turned to this Court's disposition of plaintiff's other claims. Because this Court's rulings on the FTCA and Mental Health Information Act claims were based upon its reading of the Veterans' Records Statute, these claims were remanded. 779 F.2d at 88–89. Plaintiff's claims for abuse of process and violation of the physician-patient privilege also were remanded. *Id.* at 90–91. Finally, the court stated that plaintiff's fourth amendment claims should be reached only if this Court concludes that plaintiff's claims cannot be satisfied on statutory grounds. *Id.* at 89.

## II. DISCUSSION

In view of the court of appeals' direction, this Court will first examine plaintiff's statutory claims for declaratory and monetary relief and will then determine whether these claims support granting the injunctive relief sought by plaintiff.

### A. *Statutory Claims*

#### 1. *Violation of Veterans' Records Statute*

■ Plaintiff first seeks a declaration that the disclosure of his records violated the Veterans' Records Statute, 38 U.S.C.

§ 3301, as modified by the Privacy Act, 5 U.S.C. § 552a. Pursuant to the court of appeals' decision, the plaintiff is entitled to a declaration that the Veterans' Records Statute and Privacy Act were violated by the release of plaintiff's records pursuant to the grand jury subpoena because the subpoena was neither an "order of a court of competent jurisdiction" under 5 U.S.C. § 552a(b)(11) nor a written request from the head of a federal agency under 5 U.S.C. § 552a(b)(7) and because disclosure was not authorized by a then-existing "routine use" regulation under 5 U.S.C. § 552a(b)(3). *See Doe v. DiGenova,* 779 F.2d at 84–86.

#### 2. *Violation of Physician-Patient Privilege*

Plaintiff next seeks a declaration that the VA's disclosure violated the physician-patient privilege articulated in D.C.Code § 14–307(a), which provides:

> In the Federal Courts in the District of Columbia and District of Columbia courts a physician or surgeon or mental health professional ... may not be permitted, without the consent of the person affected, or of his legal representatives, to disclose any information, confidential in nature, that he has acquired in attending a client in his professional capacity and that was necessary to enable him to act in that capacity....

The Court concludes that Section 14–307(a) is inapplicable to this case because plaintiff's records were not "disclosed" within the meaning of that statute.

Section 14–307(a) expressly applies only to disclosures made "[i]n the Federal Courts in the District of Columbia and District of Columbia courts." In addition, the exceptions to Section 14–307(a)'s general prohibition concern various in-court uses of "evidence" arising from privileged information obtained within the physician-patient relationship. *See* D.C.Code § 14–307(b). The "plain meaning" of the statute thus indicates that it applies only to in-court, evidentiary disclosure of privileged information. It therefore is "appropriate to assume that the ordinary meaning of the

language ... employed 'accurately expresses the legislative purpose.' " *Mills Music, Inc. v. Snyder,* 469 U.S. 153, 105 S.Ct. 638, 645, 83 L.Ed.2d 556 (1985) (citations omitted).

This "plain meaning" construction is amply supported by case law. One court has expressly found that the Section 14–307(a) privilege is inapplicable to disclosures not made in court. *See Logan v. District of Columbia,* 447 F.Supp. 1328, 1335 (D.D.C. 1978). This reading was recently accepted by the District of Columbia Court of Appeals. *See Vassiliades v. Garfinckel's,* 492 A.2d 580, 591 (D.C.App.1985). In addition, all other reported cases involving Section 14–307(a) have involved disclosure of information for use as evidence in a judicial proceeding. *See Simpson v. Braider,* 104 F.R.D. 512 (D.D.C.1985); *Payne v. Howard,* 75 F.R.D. 465 (D.D.C.1977); *In re Estate of Wilson,* 416 A.2d 228 (D.C.App. 1980); *Jones v. Prudential Ins. Co.,* 388 A.2d 476 (D.C.App.1978).

■ In this case, the documents disclosed by the VA were never presented to the grand jury and, since plaintiff was never indicted, were never used as evidence in any judicial proceeding. As such, the Section 14–307(a) in-court evidentiary privilege does not apply to this case, and plaintiff accordingly is not entitled to a declaration that the VA's disclosure of his records violated that statute.[3]

### 3. *Violation of Mental Health Information Act*

The D.C. Mental Health Information Act of 1978 provides that, "no mental health professional, mental health facility, data collector or employee or agent of a mental health professional, mental health facility or data collector shall disclose or permit the disclosure of mental health information to any person, including an employer." D.C. Code § 6–2002(a) (1981 ed.). Plaintiff asserts that the VA's release of his records violated this statute. The Court concludes,

however, that the statute is inapplicable for two reasons.

First, the Court believes that Congress intended the Veterans' Records Statute to completely "occupy the regulatory field" regarding disclosure of VA records and to preempt any state regulation of such activities. *See Northern Natural Gas Co. v. State Corporation Comm'n,* 372 U.S. 84, 93, 83 S.Ct. 646, 651–52, 9 L.Ed.2d 601 (1963). Where, as here, a statute does not expressly state that it preempts state and local law, Congress' preemptive intent may be inferred in two circumstances: first, if "the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress 'left no room' for supplementary state regulation"; and second, if the federal statute addresses a field "in which 'the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.' " *Hillsborough County, Florida v. Automated Medical Laboratories, Inc.,* 471 U.S. 707, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985) (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)). Both of these doctrines support the inference that the Veterans' Records Statute was intended to be preemptive.

A review of the Veterans' Records Statute reveals that it establishes a comprehensive scheme to regulate the disclosure of veterans' records. As supplemented by the Privacy Act, the Veterans' Records Statute provides carefully crafted rules and procedures regulating disclosure of records, exceptions and limitations, and civil and criminal penalties for specific violations. *See generally* 38 U.S.C. §§ 3301–3302; 5 U.S.C. § 552a. There is no suggestion that Congress intended to permit local or state laws to impose additional requirements and penalties upon the disclosure process. The Court thus concludes that the Veterans' Records Statute, "complete as it is in every detail, was intended to provide the whole

---

**3.** The Court thus need not consider defendants' argument that plaintiff waived his ability to invoke the physician-patient privilege by signing

a consent to disclosure form on January 3, 1964. *Cf. Jones v. Prudential Ins. Co.,* 388 A.2d 476 (D.C.App.1978).

and exclusive" law regarding disclosure of VA records. *United States v. Shimer*, 367 U.S. 374, 381, 81 S.Ct. 1554, 1559–60, 6 L.Ed.2d 908 (1961); *see also Transcontinental Gas Pipe Line Corp. v. State Oil and Gas Board*, —— U.S. ——, 106 S.Ct. 709, 88 L.Ed.2d 732 (1986); *Ramah Navajo School Board, Inc. v. Bureau of Revenue*, 458 U.S. 832, 102 S.Ct. 3394, 73 L.Ed.2d 1174 (1982).[4]

The Veterans' Records Statute also is part of a field of law in which the federal interest is clearly dominant. Congress' power to regulate veterans' affairs is directly derived from its share of the federal government's constitutional war powers. *See United States v. Oregon*, 366 U.S. 643, 648, 81 S.Ct. 1278, 1281, 6 L.Ed.2d 575 (1961). Exclusive federal regulation of disclosure of veterans' records thus does not encroach upon an area of "traditional state regulation." *See Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985); *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977). Accordingly, the congressional power to regulate disclosure of veterans' records "is of such a nature that the Constitution permits only of one uniform national system." *Hines v. Davidowitz*, 312 U.S. 52, 73, 61 S.Ct. 399, 407, 85 L.Ed. 581 (1941).[5]

■ Apart from preemption considerations, a second ground exists for holding the D.C. Mental Health Information Act

inapplicable. It is well settled that local or state law cannot "substantially impede federal activities or directly place 'a prohibition on the federal government'" unless Congress affirmatively permits the local or state regulation. *Don't Tear It Down, Inc. v. Pennsylvania Avenue Corp.*, 642 F.2d 527, 535 (D.C.Cir.1980) (quoting *Hancock v. Train*, 426 U.S. 167, 180, 96 S.Ct. 2006, 2013, 48 L.Ed.2d 555 (1976)). Congress has made no affirmative declaration that, with respect to document disclosure, the VA is subject to regulation by state or local authorities. Nor can it be contended that the Mental Health Information Act, which would impose an affirmative duty upon the VA and provide civil and criminal penalties for violations, *see* D.C.Code §§ 6–2061—6–2062, constitutes an "incidental or nonburdensome" local requirement. *Don't Tear It Down, Inc.*, 642 F.2d at 536 & n. 77. The Act therefore cannot be found to apply to the VA's disclosure of plaintiff's records. *See Hancock v. Train*, 426 U.S. at 178–79, 96 S.Ct. at 2012–13; *Ohio v. Thomas*, 173 U.S. 276, 281–84, 19 S.Ct. 453, 454–56, 43 L.Ed. 699 (1899); *see also Don't Tear It Down, Inc.*, 642 F.2d at 534–35 nn. 71–72.

### 4. *Abuse of Process*

Plaintiff also seeks a declaration that the subpoena was an abuse of compulsory process because it violated a right of privacy purportedly conferred by the Privacy Protection Act, 42 U.S.C. §§ 2000aa *et seq.* (1982), and guidelines promulgated there-

---

**4.** The legislative history of the forerunner of the Veterans' Records Statute, Section 30 of the World War Veterans' Act of 1924, Pub.L. No. 68–242, 43 Stat. 607, 615 (1924), supports this view. One of the purposes of the 1924 Act was "the codification of all existing statute law under which the Veterans' Bureau has been administered in the past into one comprehensive and easily understandable act" so as to "restate the whole of the statute law under which the bureau operates." S.Rep. No. 397, 68th Cong., 1st Sess. 1–2 (1924); *see also* 65 Cong.Rec. 10232 (June 2, 1924) (statement of Rep. Hastings). The congressional intent to enact a comprehensive law suggests that Congress did not envision additional state regulation in this area.

**5.** Moreover, permitting additional state regulation of disclosure of VA records plainly threat-

ens to "disturb[ ] the uniformity of the federal scheme." *Transcontinental Gas Pipe Line Corp.*, 106 S.Ct. at 717. By law, officials in VA regional offices in the several states maintain records and are authorized to make initial decisions on disclosure of such records. *See* 38 C.F.R. § 1.500 (1985). If state law were held to apply to disclosure of VA records, then identical violations of the Veterans' Records Statute by regional officials in different states could give rise to differing remedies. A veteran in one state might have only the remedies specified in the Veterans' Records statute, while a veteran in the District of Columbia, for example, would have those remedies plus additional "state law" remedies. *See* D.C.Code §§ 6–2061—6–2062.

under, 28 C.F.R. §§ 59.1–59.6 (1985). The Act and guidelines regulate searches and seizures of materials possessed by a person with the purpose to disseminate to the public through some form of public communication. *See* 42 U.S.C. § 2000aa(a), (b).[6]

■ The Privacy Protection Act and its implementing guidelines do not apply to this case for two reasons. First, the Act and the guidelines apply only to searches and seizures of material and not to material obtained, as in this case, by subpoena. *See* 42 U.S.C. § 2000aa(a), (b); 28 C.F.R. § 59.3. Indeed, the purpose of the Act was to encourage use of subpoenas to obtain material. *See* S.Rep. No. 874, 96th Cong., 2d Sess. 4, 11, *reprinted in* 1980 U.S.Code Cong. & Ad.News 3950, 3951, 3957. The same purpose is articulated in the guidelines. *See* 28 C.F.R. § 59.1(b) ("The guidelines in this part are not intended to inhibit use of less intrusive means of obtaining documentary materials, such as the use of a subpoena....").

Second, the Act applies only to materials or documents that are held with the purpose of dissemination to the public. In this case there is no showing that anyone intended to publicly disseminate the contents of plaintiff's VA records. As such, the Act provides no protection. As the Senate Report noted:

> In order to qualify for the statute's protections, the materials must be possessed in connection with a purpose of disseminating some form of public communication. Materials which are prepared or collected for other purposes, are not protected. Thus, business records or reports which are required to be filed with government agencies would not be protected....

S.Rep. No. 874, *supra,* at 10, 1980 U.S. Code Cong. & Ad.News 3956, 3957.

To be sure, the Act does require the Attorney General to issue guidelines relating to the obtaining of documentary materials and to incorporate in such guidelines "a recognition of special concern for privacy interests in cases in which a search or seizure of such documents would intrude upon a known confidential relationship such as that which may exist between ... doctor and patient." 42 U.S.C. § 2000aa–11(a)(3). Again, however, the guidelines apply only to searches and seizures, not to subpoenas. *See* 28 C.F.R. § 59.1(b). Moreover, even if the subpoena of plaintiff's records had violated the guidelines, the Act specifically provides that a failure to comply with the guidelines may not be litigated. *See* 42 U.S.C. § 2000aa–12.

■ Plaintiff also appears to press a claim for common-law abuse of process. In the District of Columbia, this tort occurs when there is " 'a perversion of the judicial process and achievement of some end not contemplated' " by law. *McCarthy v. Kleindienst,* 741 F.2d 1406, 1414 (D.C.Cir. 1984) (quoting *Morowitz v. Marvel,* 423 A.2d 196, 198 (D.C.App.1980)); *see also Neumann v. Vidal,* 710 F.2d 856, 860 (D.C. Cir.1983). In this case, Stanley's purposes in subpoenaing plaintiff's VA records were to determine whether plaintiff was defrauding the VA and whether the defense of insanity might be available. The issuance of the subpoena was thus entirely consistent with the purpose of a grand jury proceeding, which is "to determine whether a crime has been committed and whether criminal proceedings should be instituted against any person." *United States v. Calandra,* 414 U.S. 338, 343–44, 94 S.Ct. 613, 617–18, 38 L.Ed.2d 561 (1974). As such, the subpoena did not pervert the judicial process or achieve an improper purpose, and no tortious abuse of process occurred.

---

**6.** The Act was passed in response to the Supreme Court's decision in *Zurcher v. Stanford Daily,* 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978), which held that the fourth amendment does not confer any special protections against search and seizure of documentary evidence held by an individual or entity that is not a suspect in the crime under investigation. *See* S.Rep. No. 874, 96th Cong., 2d Sess. 4, *reprinted in* 1980 U.S.Code Cong. & Ad.News 3950, 3950–51.

## 5. *Federal Tort Claims Act*

Plaintiff's final statutory claim is for damages under the FTCA due to violations of the D.C. physician-patient privilege and the D.C. Mental Health Information Act, abuse of process, tortious invasion of privacy by intrusion, and breach of confidential relationship. The Court has already concluded that the local statutes were not violated and that no abuse of process occurred.

The tort of invasion of privacy by intrusion is cognizable under the FTCA. *See Black v. Sheraton Corp. of America,* 564 F.2d 531, 539 (D.C.Cir.1977). Essentially, the tort requires that there be an intentional obtaining of information reasonably thought confidential by improperly intrusive means. *See Pearson v. Dodd,* 410 F.2d 701, 704 (D.C.Cir.), *cert. denied,* 395 U.S. 947, 89 S.Ct. 2021, 23 L.Ed.2d 465 (1969). The claim may be defeated if the intrusion is reasonable under the circumstances or if the intrusion is not "serious." *See Jackson v. District of Columbia,* 412 A.2d 948, 954 (D.C.App.1980).

Here the intrusion effected by the subpoena of plaintiff's VA records was reasonable under the circumstances and thus not tortious. As was noted above, the subpoena was issued with the proper purpose of ascertaining whether plaintiff might be defrauding the government. Moreover, the issuance of the subpoena, and the VA's release of the records, were made in apparent compliance with applicable VA regulations. *See* 38 C.F.R. §§ 1.506(a), 1.511(b); *see also Doe v. DiGenova,* 779 F.2d at 88 n. 26. In addition, the intrusion caused by release of the records was not "serious" because the scope of the disclosure was strictly limited. The records were seen by only a few people, were not presented to the grand jury or used in any judicial proceedings, and are protected from further disclosure by the grand jury secrecy rule. *See* Fed.R.Crim.P. 6(e).

Plaintiff also argues that disclosure of his records constitutes the tort of breach of confidential relationship recently recognized in this jurisdiction. *See Vassiliades v. Garfinckel's,* 492 A.2d 580, 590–92 (D.C. App.1985). This tort consists of unconsented, unprivileged disclosure to a third party of nonpublic information that has been learned within a confidential relationship. *Id.* at 591.

There was no breach of confidential relationship in this case. As the *Vassiliades* court noted, that tort occurs only when there is an *unprivileged* disclosure of confidential information. 492 A.2d at 591. While the *Vassiliades* court did not discuss when disclosures are "privileged," cases in other jurisdictions have stated that a disclosure is privileged if it is made under compulsion by legal process. *See Suburban Trust Co. v. Waller,* 44 Md.App. 335, 408 A.2d 758, 764–65 (1979); *see also Burrows v. Superior Court of San Bernardino County,* 13 Cal.3d 238, 243, 118 Cal. Rptr. 166, 169, 529 P.2d 590, 593 (1974). *Cf. Indiana National Bank v. Chapman,* 482 N.E.2d 474, 485 (Ind.App.1985) (noting that disclosure was permitted by "public duty" privilege when information was released to "legitimate law enforcement investigation").[7] Since the disclosure of plaintiff's records was made pursuant to grand jury subpoena, it was privileged and thus not tortious.

---

**7.** While the above-cited cases all concern breach of confidential relationships by banks, the doctrine of privilege identified by those cases should extend to the physician-patient context. A law review note heavily relied upon by the *Vassiliades* court, *see* 492 A.2d at 591, found that the tort of breach of physician-patient confidential relationship is rooted in case law concerning bank-customer relationships. *See generally* Note, *Breach of Confidence: An Emerging Tort,* 82 Colum.L.Rev. 1426 (1982). The note suggests that a privilege for disclosure pursuant to compulsion of law should apply to the physician-patient relationship. *Id.* at 1462–64. Moreover, *Vassiliades* itself, and the case law cited in that case, concerned voluntary disclosures. *See Vassiliades,* 492 A.2d at 584–86; *Humphers v. First Interstate Bank,* 68 Or.App. 573, 684 P.2d 581, 583 (1984), *aff'd in part and rev'd in part,* 298 Or. 706, 696 P.2d 527 (1985) (en banc); *Doe v. Roe,* 93 Misc.2d 201, 400 N.Y.S.2d 668, 671 (Sup. Ct.1977).

Even if the disclosure of plaintiff's records was tortious under District of Columbia law, liability under the FTCA would be barred by 28 U.S.C. § 2680(a). That provision excludes from FTCA coverage "[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation is valid."

 The court of appeals noted that the disclosure in this case was made pursuant to two VA regulations which "seem, on their faces, to authorize the disclosure of Doe's records" and intimated that the 28 U.S.C. § 2680(a) exception thus might preclude liability under the FTCA. *See* 779 F.2d at 88 n. 26. Plaintiff has advanced no arguments which lead this Court to a contrary conclusion. While plaintiff argues that Stanley's issuance of the subpoena was negligent as a result of the Attorney General's guidelines, *see* 28 C.F.R. § 59.-1(b), this Court has already found that those guidelines simply do not apply to this case. Nor has plaintiff established that VA officials, acting in apparent conformity with applicable regulations, were negligent in releasing the records. In sum, there is nothing in the record to indicate that any individuals involved in the disclosure of plaintiff's records failed to exercise due care.

Because the Court concludes that the release and disclosure of plaintiff's records was not tortious, and because 28 U.S.C. § 2680(a) precludes imposition of liability, plaintiff's claim for damages under the FTCA must be denied.

### B. *Availability of Injunctive Relief*

 The Court has concluded that the release and disclosure of plaintiff's records violated only the provisions of the Privacy Act, as incorporated into the Veterans' Records Statute. The Court thus must consider whether that statutory violation authorizes the entry of "a remedial court order requiring (a) return of the records to Doe, (b) exclusion of the information from the grand jury, and (c) no further disclo-

sure by the U.S. Attorney or his staff[.]" *Doe v. DiGenova*, 779 F.2d at 89. The Court holds that it does not.

The Privacy Act permits entry of injunctive relief for only two specified violations, neither of which occurred in this case. *See* 5 U.S.C. § 552a(g)(2)(A)–(B). Courts in this jurisdiction have construed the Privacy Act to preclude injunctive relief in all other cases. *See Hastings v. Judicial Conference of the United States*, 770 F.2d 1093, 1104 (D.C.Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 3272, 91 L.Ed.2d 562 (1986); *Houston v. United States Dep't of Treasury*, 494 F.Supp. 24, 29 (D.D.C.1979). This construction is founded upon the principle that "when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies." *National Railroad Passenger Corp. v. National Ass'n of Railroad Passengers*, 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974). Accordingly, the remedial injunctive relief sought by plaintiff is not authorized by the Privacy Act. The Court thus need not consider whether the new routine use promulgated by the VA precludes entry of such relief. *See Doe v. DiGenova*, 779 F.2d at 89.

Even if the injunctive relief sought by plaintiff were authorized, the Court would conclude that no injunction should issue under the circumstances of this case. The Court views this case as "so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant." *Chamber of Commerce v. United States Dept. of Energy*, 627 F.2d 289, 291 (D.C. Cir.1980) (per curiam); *see also Community for Creative Non-Violence v. Hess*, 745 F.2d 697 (D.C.Cir.1984).

The only copy of plaintiff's records, apart from that maintained by the VA, is held by this Court under seal, with the protection against disclosure provided with that status. *See* Fed.R.Civ.P. 26(c); Fed.R.Crim.P. 6(e)(6). Further disclosure of the contents of the records is barred by the rule of

grand jury secrecy. *See* Fed.R.Crim.P. 6(e). Finally, while plaintiff asserts that his records may be subject to future disclosure by the VA under the new routine use regulation, there is no evidence in the record to justify this fear. Absent such evidence, the Court cannot conclude "that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *United States v. W.T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 898, 97 L.Ed. 1303 (1953).

## C. *Constitutional Claims*

Having determined that plaintiff's requests for relief may not be satisfied on statutory grounds, the Court now turns to plaintiff's claims that the subpoena violated his rights under the fourth amendment and that the disclosure of his records improperly impinged upon his constitutional right to privacy.

### 1. *Fourth Amendment Claims*

In its earlier decision, this Court found that plaintiff retained an expectation of privacy in his VA records. The Court concluded, however, that the subpoena for those records did not violate the fourth amendment because the subpoena was not overly broad or indefinite, the agency issuing the subpoena was authorized to conduct the investigation it was conducting, and the materials sought through the subpoena were relevant to that investigation. *See Doe v. DiGenova*, mem. at 6–7 (citing *United States v. Miller*, 425 U.S. 435, 445, 96 S.Ct. 1619, 1625, 48 L.Ed.2d 71 (1976); *Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186, 208, 66 S.Ct. 494, 505, 90 L.Ed. 614 (1946) ). The Court sees no need to reconsider this decision. Indeed, the holding is buttressed by the unsealing of the Stanley affidavit. In view of Stanley's reasonable suspicion that plaintiff might be defrauding the VA, his subpoena of the records was proper and wholly consistent with the grand jury's purpose. *See United States v. Calandra*, 414 U.S. at 343–44, 94 S.Ct. at 617–18.

### 2. *Violation of Right to Privacy*

In *Whalen v. Roe*, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977), the Supreme Court recognized a constitutional right to avoid disclosure of confidential materials about an individual that are already in the possession of the government. *Id.* at 599–600, 97 S.Ct. at 876–77. This Court previously rejected plaintiff's claim of violation of that right on the grounds that the disclosure effected by the subpoena was strictly limited in scope and that the records were protected from further disclosure under the grand jury secrecy rule. *See Doe v. DiGenova*, mem. at 7–8. The Court adheres to this holding.

As the Supreme Court explained in *Whalen* and in *Nixon v. Administrator of General Services*, 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977), the determination of whether a constitutional invasion of privacy has occurred involves balancing the extent of the disclosure, the protections against additional disclosure, and the public interest favoring disclosure. Even when psychiatric information is involved, the constitutional right to privacy is not absolute. *See In re Zuniga*, 714 F.2d 632, 641 (6th Cir.), *cert. denied*, 464 U.S. 983, 104 S.Ct. 426, 78 L.Ed.2d 361 (1983); *United States v. Lindstrom*, 698 F.2d 1154, 1167 (11th Cir.1983); *Caesar v. Mountanos*, 542 F.2d 1064, 1068 (9th Cir.1976), *cert. denied*, 430 U.S. 954, 97 S.Ct. 1598, 51 L.Ed.2d 804 (1977).

Here plaintiff's VA records were seen by only a small number of persons, and plaintiff is protected from further disclosure by the rule of grand jury secrecy. *See In re Zuniga*, 714 F.2d at 642 (noting protection afforded by grand jury secrecy rule in right to privacy context); *see also Nixon v. Administrator of General Services*, 433 U.S. at 458, 97 S.Ct. at 2797–98 (noting protections against disclosure); *Whalen v. Roe*, 429 U.S. at 600–03, 97 S.Ct. at 877–78 (same); *Trade Waste Management Ass'n, Inc. v. Hughey*, 780 F.2d 221, 234 (3d Cir. 1985) (same). Moreover, the government clearly has a substantial interest in investi-

gating potential fraud. *See Whalen v. Roe*, 429 U.S. at 598, 97 S.Ct. at 876 (noting state's "vital interest" in controlling distribution and preventing misuse of dangerous drugs); *Ramie v. City of Hedwig Village*, 765 F.2d 490, 492–93 (5th Cir.1985) (noting legitimate governmental interest in investigating crime), *cert. denied*, —— U.S. ——, 106 S.Ct. 809, 88 L.Ed.2d 784 (1986). In view of these considerations, the Court concludes that no constitutional invasion of privacy occurred in this case.

The United States Court of Appeals for the Sixth Circuit reached a similar conclusion in *In re Zuniga*. There a grand jury had issued subpoenas duces tecum for psychiatric records in connection with an investigation of alleged schemes to defraud health insurance plans. 714 F.2d at 634. The court found that release of the records pursuant to the subpoenas would not result in an unconstitutional invasion of privacy because the rule of grand jury secrecy would result in disclosure "only to the minimal extent necessary to promote a proper governmental interest." *Id.* at 642. The court added, "weighing the slight intrusion on the plaintiff's privacy interest against the need for the grand jury to conduct an effective and comprehensive investigation into alleged violation of the law, the Court concludes that enforcement of the subpoenas does not unconstitutionally infringe on the rights of patients." *Id.* That rationale applies with equal force to the case at bar. *Cf. In re Witness Before the Special October 1981 Grand Jury*, 722 F.2d 349, 353 (7th Cir.1983) (first amendment does not prevent grand jury from investigating Medicare or Medicaid fraud by subpoenaing doctor's patient records).

III. CONCLUSION

The Court holds that plaintiff is entitled to a declaration that the disclosure of his VA records violated the Veterans' Records Statute and the Privacy Act. Accordingly, plaintiff's motion for summary judgment is granted to that extent. As to plaintiff's other statutory and constitutional claims and requests for declaratory, monetary, and injunctive relief, plaintiff's motion for

summary judgment is denied and defendants' motion for summary judgment is granted.