Ernest JACKSON, Plaintiff,

v.

DISTRICT OF COLUMBIA, et al., Defendants.

Civ. A. No. 86–2201.

United States District Court, District of Columbia.

Oct. 29, 1987.

Joan Harvill, Washington, D.C., for plaintiff.

Magda Lopez, Washington, D.C., for defendants.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

Plaintiff brings this action against various law enforcement personnel of the District of Columbia Metropolitan Police De-

partment, alleging violation of his rights under the fourth, fifth and fourteenth amendments as well as assorted common law doctrines. Presently before the court is defendants' motion for summary judgment as to two of the named defendants, Police Chief Maurice Turner, Jr. and Sergeant Joe Battle. For the reasons set forth below, we grant defendants' request in full. In reaching our conclusions, the court is guided by recent pronouncements of the Supreme Court and the Court of Appeals for the District of Columbia Circuit delineating the contours of official liability and the breadth of qualified official immunity.

## I.

The episode that precipitated this lawsuit occurred on September 13, 1985. At approximately 4 p.m. on that date, plaintiff, Ernest Jackson, was a passenger in an automobile[1] that was pulled over at the intersection of 14th and Monroe Streets, N.W., in the District of Columbia, by Metropolitan Police Department Officers Herta Mullen and Bobby Dickens.

From this point the parties' versions of the ensuing events diverge.[2] According to plaintiff, Officer Mullens, who was dressed in plain clothes, approached the car and ordered plaintiff out. After plaintiff complied, Mullens opened the glove compartment, removed a brown bag, and confiscated some "old cigarette stubs" from the car's ash tray. Officer Mullens then claimed that the bag contained cannabis. Plaintiff inquired as to why Mullens was harassing him, to which Mullens responded by handcuffing plaintiff, arresting him for possession of controlled substances, and, accompanied by Officer Dickens, escorted plaintiff to the Fourth District police station.

Once at the station, plaintiff allegedly overheard and participated in conversations with a sergeant and two police officers, all of whom are unnamed, who informed Jackson that the actual reason for his arrest was that Officer Mullens "had not met her arrest quota for the month." Plaintiff spent the night in jail; the following day charges against him were dropped and he was released.

Defendants' recollections of the incident differ from that offered by plaintiff in important respects. Officer Mullens avers, *inter alia*, that she approached the car upon observing plaintiff in the process of inhaling from a hand-rolled cigarette which appeared to contain cannabis. After arresting plaintiff and accompanying him to the police department, Mullens claims that she learned that plaintiff was ineligible for citation release because a bench warrant had been issued for his arrest on January 29, 1972. (Plaintiff denies the existence of any outstanding bench warrants issued in his name.) Hence, according to defendants, plaintiff could not be released until the following day, when the United States Attorney's Office decided that plaintiff would not be prosecuted.

Plaintiff filed this action on August 7, 1986, naming as defendants the two arresting officers, Herta Mullens and Bobby Dickens; Sergeant Joe Battle, who was responsible for reviewing the arresting officers' paperwork to ensure that it demonstrated probable cause for the arrest; Maurice Turner, the chief of District of Columbia police at the time of the arrest; and the District of Columbia. Plaintiff accuses the arresting officers, *inter alia*, of arresting and subsequently detaining him without probable cause to do so, as well as failing to read plaintiff his *"Miranda* rights," all in violation of the fourth and fifth amendments. In addition, he charges the remaining defendants with promoting and promulgating a department-wide policy of initiating unwarranted arrests for the purpose of

---

1. The car was owned and operated by another individual who is not a party to this action.

2. The parties' respective versions of the pertinent facts are taken for the most part from Plaintiff's Complaint ¶¶ 9–21 ("Complaint"); Plaintiff's Answers to Interrogatories 1–3 ("Pltf. Ans. to Inter."); Plaintiff's Memorandum in Opposition to Summary Judgment ("Pltf.Opp."); Defendants' Memorandum in Support of Summary Judgment at 1–2 ("Def.Memo."); and the Deposition of Officer Mullens.

meeting arrest "quotas" established for each officer.

## II.

Plaintiff submits that each of his constitutional claims against the named state officials are actionable both directly under the constitution and "indirectly" by virtue of the statutory cause of action provided in § 1983. We disagree. In *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and its progeny, *see, e.g., Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979); *Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980), the Supreme Court recognized a cause of action against federal government officials under the Constitution where no other remedy existed in federal law. As expressed in the oft-cited words of Justice Harlan, the implied cause of action was necessary because "[f]or people in Bivens' shoes, it is damages or nothing." *Bivens*, 403 U.S. at 410, 91 S.Ct. at 2012 (concurring opinion).

Courts have recognized that where "Congress has provided an alternative remedial scheme, which is intended to be a substitute for direct recovery under the constitution [—such as § 1983—] a *Bivens*-type action is inappropriate." *Gladden v. Barry*, 558 F.Supp. 676, 678 (D.D.C.1983) (quoting *Williams v. Bennett*, 689 F.2d 1370, 1390 (11th Cir.1982), *cert. denied*, 464 U.S. 932, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983)). *See also Hunt v. Robeson County Dept. of Soc. Services*, 816 F.2d 150, 152 n. 2 (4th Cir.1987); *Ward v. Caulk*, 650 F.2d 1144, 1147–48 (9th Cir.1981); *cf. Reuber v.*

*United States*, 750 F.2d 1039, 1054 n. 19 (D.C.Cir.1984) ("In a case alleging a *Bivens*-type claim, federal rather than state action must be alleged in order to sustain the complaint").[3] So-called "federal action" is not involved in this case. All of the named defendants in this action are state officials or agencies and are amenable to suit under § 1983. Accordingly, plaintiff may proceed, if at all, only with his § 1983 claims.[4]

Defendants contend, however, that plaintiff's § 1983 claims are infirm as well. Defendants deny that there is any basis in fact for plaintiff's freewheeling allegations of a department-wide "quota" arrest policy, and assert that plaintiff is unable to establish that Police Chief Turner or Sergeant Battle ratified or otherwise participated in such a policy. Additionally, defendants invoke the cloak of official immunity as a total bar to liability in this case. Our initial task, then, will be to determine whether plaintiff has established a *prima facie* case of illegal conduct on the part of Turner or Battle. We then devote fuller attention to these claims in light of defendants' affirmative pleas of official immunity.

## III.

Plaintiff's complaint, in a rambling and verbose recitation, attempts to set forth a litany of charges levelled against Police Chief Turner and Sergeant Battle, charges that are embellished in plaintiff's opposition to summary judgment. Plaintiff contends that defendants "promulgated and promoted" an arrest quota policy of the Metropolitan Police Department designed "to encourage, require and exhort [department officers] ... to meet a specified number of arrests each month." Complaint

---

**3.** The Court of Appeals for the District of Columbia Circuit has recently reserved opinion on this issue. *Haynesworth v. Miller*, 820 F.2d 1245, 1248 (D.C.Cir.1987).

**4.** Plaintiff claims that he is not precluded from raising parallel § 1983 and *Bivens*-type claims, since "[p]leading parallel causes of action is permitted under F.R.C.P. 8(e)(2)." Pltf.Opp. at 7–8. But plaintiff's reference to liberal pleading rules is inapposite to the substantive question of whether direct recovery under the Constitution is available in a given context.

We also note that our disposition of plaintiff's § 1983 claims in light of defendants' pleas of official immunity, *see infra*, encompasses plaintiff's *Bivens*-type claims as well. For purposes of immunity law we need not distinguish between § 1983 and direct constitutional claims; indeed, it would be "untenable" to proffer such a distinction. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 n. 30, 102 S.Ct. 2727, 2738 n. 30, 73 L.Ed.2d 396 (1982); *Haynesworth*, 820 F.2d at 1264 n. 151. Thus defendants are immunized from plaintiff's *Bivens*-type claims precisely to the extent that they are shielded from § 1983 liability.

¶¶ 15, 16. Defendants are charged with "bringing acrimony upon the police members who did not make their arrests quota, resulting in police members making arrests without probable cause to do so." *Id.* at ¶ 15. Plaintiff also asserts that Turner and Battle "fail[ed] to properly train, discipline and supervise police member defendants" who "habitually engaged in this practice" of making unwarranted arrests. *Id.* at ¶¶ 16, 26. As to plaintiff's own incident, the complaint alleges that both defendants "took an active role in the investigation of the events that led to plaintiff's arrest," *id.* at ¶ 17, and that Turner "fail[ed] to properly investigate the unwarranted criminal charges placed against plaintiff...." *Id.* at ¶ 27.

Plaintiff's catalogue of accusations, once the wheat is separated from the chaff, and as best we can parse it, reduces to claims of policymaking liability on the part of Police Chief Turner as well as supervisory liability on the part of Turner and Sergeant Battle.[5] To prevail on a claim of policymaking liability, plaintiff must demonstrate that the "official against whom liability is asserted has the power ... to formulate policy," that the official "has exercised that policymaking authority to generate improper pratices, and that there exists "a causal connection between the policy established and the wrong committed against" the plaintiff. *Haynesworth v. Miller,* 820 F.2d 1245, 1264 (D.C.Cir.1987). Similarly, supervisory or "training" liability attaches when "the official had an obligation to supervise or train the wrongdoer ..., [ ] the duty was breached, and [ ] this breach was a proximate cause of the injury." *Id.* at 1260. *See also Rizzo v. Goode,* 423 U.S. 362, 371, 96 S.Ct. 598, 604, 46 L.Ed.2d 561 (1976); *Hays v. Jefferson County,* 668 F.2d 869, 872 (6th Cir.), *cert. denied,* 459 U.S. 833, 103 S.Ct. 75, 74 L.Ed.2d 73 (1982).

■ Guided by these working principles, we proceed to examine the evidence plaintiff proffers in support of his overstated claims of policymaking and supervisory liability. That evidence consists of the following:

—three newspaper articles, two appearing in the *Washington Post* and one from the *Washington Times,* "whereby it is shown that it was common knowledge in the city that the quota system led to arrests without probable cause";

—plaintiff's answers to interrogatories, in which he describes the details of his own arrest, as well as relating his conversations with officers who allegedly claimed that he was arrested merely because "police were making their monthly quotas";

—a copy of the Metropolitan Police Department's "performance standards" manual in effect at the time of plaintiff's arrest, which, plaintiff argues, is merely a quota system in disguise.

Pltf.Opp. at 2–3, Exs. 1, 3; Pltf.Ans. to Inter. at 2–3. We find these minute fragments of evidence insufficient to demonstrate a "genuine issue" that would enable plaintiff to withstand summary judgment. Fed.R.Civ.P. 56.

First, we note that defendant Turner concedes that he assisted in the promulgation and implementation of the "performance standards" in his capacity as police chief, thus bringing him within the purview of policymaking liability. But from our survey of the "performance standards" manual, we detect not a scintilla of evidence demonstrating or even suggesting that District of Columbia police officers were encouraged to initiate arrests absent probable cause to do so. Under the evaluation system, officers were assigned "performance levels" based on over a dozen "guidelines," including the number of traffic tickets issued and criminal arrests initiated within a

**5.** Contrary to defendants' representations, plaintiff does not seek to prevail against defendants under a theory of *respondeat superior,* which both parties recognize is an impermissible basis of official or municipal liability. *See Oklahoma City v. Tuttle,* 471 U.S. 808, 818, 105 S.Ct. 2427, 2433, 85 L.Ed.2d 791 (1985) (plurality opinion);

*Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Carter v. District of Columbia,* 795 F.2d 116, 122 (D.C.Cir.1986). Instead, plaintiff's complaint is predicated on a fault-based analysis, and is properly fashioned so as to hold defendants accountable directly rather than vicariously.

four-week period. Plaintiff adverts to no portion of the manual from which one is able to infer that police officers were to achieve these goals at the expense of the constitutional rights of District of Columbia citizens. This is not a case, therefore, of an overtly or facially unconstitutional government policy, *cf. Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), nor can we conclude from the present record that the effect of the policy was to promote illegal law enforcement practices.

The newspaper articles cited by plaintiff are even less probative of his claims of rampant improper arrest activities pervading the police department. Plaintiff inaccurately asserts that the articles evince "common knowledge in the city that the quota system led to arrests without probable cause." Pltf.Opp. at 3. In fact, the articles do little more than rehash the terms and details of the evaluation system. Not one of the articles so much as hints at an increase in the rate of illegal arrests caused by official policy, nor, for that matter, do they focus on criminal arrests at all. Instead, the *Post* and *Times* reporters observed that the District's "publicized crackdown on traffic violators" resulted in a doubling of traffic tickets issued for a given period in 1985. Washington Times, April 26, 1985, at 5B, col. 1–6; Washington Post, May 14, 1985, at B2, col. 1–2; Washington Post, February 3, 1986, at D3, col. 3. It requires a great inferential leap, if not a vigorous imagination, to interpret a "publicized crackdown on traffic violators" as probative of a pattern of wanton police activity promulgated, administered, and encouraged at the highest rungs of the law enforcement apparatus.

We are left, then, with the circumstances of plaintiff's own arrest, hearsay evidence of incriminating representations allegedly made by police officers, and plaintiff's scattered references to "widespread knowledge in the community" of illicit police conduct. Pltf.Opp. at 4, 7. The latter two items are nothing more than innuendo and rumor, while the isolated incident leading to plaintiff's arrest, even if illegal and unwarranted under established law, hardly permits a finding of illegal policy or inept supervision. *See Martin v. Malhoyt*, 830 F.2d 237, 255 (D.C.Cir.1987) ("One instance, however egregious, does not a pattern or practice make"). Whittled to its core, this case bears a notable and unfortunate resemblance to others frequently brought in the courts of this circuit, in which plaintiffs have presented little more than their own arrests as evidence of municipal tolerance of, and acquiescence in, routine police misconduct. *E.g., Martin, supra*, at 254–57; *Carter*, 795 F.2d at 122–24; *Smith–Bey v. District of Columbia*, 546 F.Supp. 813, 814–15 (D.D.C.1982) On the present record we cannot conclude that Turner or Battle breached his supervisory or policymaking duty, nor can we discern any causal link between their conduct and the alleged wrongdoings suffered by plaintiff.[6]

## IV.

It may well be that plaintiff hopes to flesh out his claims against Turner and Battle in the course of trial, and possibly establish a *prima facie* case of supervisory or policymaking liability. He is foreclosed from such an attempt, however, because of Turner's and Battle's defense of official immunity. Given "the special nature of the immunity defense," *Martin*, 830 F.2d at 255, we are therefore not free to entertain the possibilities which plaintiff may have in mind.

As government officials, Police Chief Turner and Sergeant Battle enjoy qualified

---

6. Equally unfounded is plaintiff's contention that each defendant "acted wilfully [sic], knowingly, purposefully with the specific intent to deprive plaintiff of his right[s]." Complaint ¶ 21. Plaintiffs have failed to present even scant evidence that Police Chief Turner had any knowledge whatever of the circumstances of plaintiff's arrest, nor does the present record indicate any personal malice of Sergeant Battle directed against plaintiff. It is beyond cavil that claims of unconstitutional motive must be buttressed by particularized factual support. *See, e.g., Hobson v. Wilson*, 737 F.2d 1, 30 (D.C.Cir. 1984), *cert. denied sub nom.*, 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985). Thus plaintiff's claims of illegal intent also cannot survive summary judgment.

immunity from § 1983 damage actions. In the leading case of *Harlow v. Fitzgerald,* the Supreme Court defined the contours of official immunity as follows: [G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established ... rights of which a reasonable person would have known." 457 U.S. at 818, 102 S.Ct. at 2738. The Court has construed the qualified immunity defense in such a way that it "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986) (recognizing qualified immunity of state police officers).[7]

■ The Court has also made clear that the qualified immunity defense is intended not only to preclude liability for money damages, but also to shield public officials from the expense and rigors of pre-trial and trial proceedings. *See Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985) (*"Harlow* thus recognized an entitlement not to stand trial or face the other burdens of litigation ... The entitlement is an *immunity from suit* rather than a mere defense to liability") (emphasis in original). The defense has thus been construed so as to allow for the disposition of many claims against public officials at the summary judgment stage. To overcome an official's affirmative plea of immunity on summary judgment, plaintiffs must come forward with particularized, nonconclusory allegations of unconstitutional or patently illegal conduct. *Anderson v. Creighton,* — U.S. —, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987); *Martin,* 830 F.2d at 256. This the plaintiff has failed to do. The heightened pleading

standard is justified by the need to shield public actors from groundless legal proceedings that "can be 'peculiarly disruptive of effective government.'" *Anderson,* 107 S.Ct. at 3039 n. 6 (citing *Harlow,* 457 U.S. at 817, 102 S.Ct. at 2738); *Martin,* 830 F.2d at 256.

Hence our clearly defined mission, when confronted by a plea of official immunity at the summary judgment stage, is to search the record for "corroborative allegations to support an inference that defendants ... had notice of or acquiesced in the acts complained of...." *Smith–Bey v. District of Columbia,* 546 F.Supp. 813, 815 (D.D.C. 1982); *cf. Martin,* 830 F.2d at 256; *Hobson,* 737 F.2d at 29. Our thorough examination of the record, *see supra,* has uncovered no such evidence tending to implicate defendants Turner or Battle in the alleged wrongful conduct, despite the fact that plaintiff has been accorded wide-ranging discovery in an attempt to support his allegations.[8]

For the foregoing reasons, we conclude that at this juncture plaintiff has failed to make out a *prima facie* case of § 1983 liability against either Sergeant Battle or Police Chief Turner. Nor has plaintiff put forward an independent theory, premised on § 1983 or some other avenue of liability, on which to hold these defendants accountable for the unconstitutional conduct alleged in this action. In light of the defendants' meritorious plea of qualified immunity, plaintiff is precluded from proceeding any further against Turner or Battle on his constitutional claims.

## V.

Although defendants do not expressly seek summary judgment as to plaintiff's claims against the District of Columbia, we

7. The cloak of qualified immunity is available to federal and state officials alike. *See, e.g., Malley, supra* (state troopers); *Harlow, supra* (top White House aides).

8. A meritorious defense of immunity generally should shield a government official from the burdens of pretrial discovery. *See supra* at 26–27; *cf. Harlow,* 457 U.S. at 821, 102 S.Ct. at 2739 (Brennan, J., concurring opinion) ("[I]t seems inescapable to me that some measure of

discovery may sometimes be required to determine exactly what a public-official defendant did 'know' at the time of his actions"). To the extent that defendants in this case were visited with unduly onerous discovery demands, any overbroad requests were expeditiously tailored by this court. *See, e.g.,* Order of Sept. 1, 1987 [Available on WESTLAW, 1987 WL 16843] (granting in part and denying in part plaintiff's motion to compel production of documents).

shall, in the interest of judicial economy, dispose of these claims as well. We recognize that municipalities may be held liable in damages for constitutional violations, *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and that unlike individual officers they may not invoke the official immunity defense. Municipal liability attaches under § 1983 "when execution of a government's policy or custom ... inflicts the [constitutional] injury...." *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037–38; *see also Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); *Haynesworth,* 820 F.2d at 1271–1272. The touchstone of municipal liability, then, is whether officials, in condoning illegal conduct, "can properly be said to have acted as the alter ego of the municipality," *Haynesworth,* 820 F.2d at 1272, an inquiry which typically poses a question of fact rather than law. *Id.*

█ We have already concluded, however, that the present record is completely barren of evidence establishing a causal nexus between the alleged wrongdoings and senior District of Columbia law enforcement personnel. We have also searched the record in vain for substantiation of an illicit policy, pattern or custom of illegal arrests that would support a finding of policymaking or supervisory liability. Given these findings, we can conjure up no factual or legal scenario that would impli-

cate the established practices of the District of Columbia in the alleged improprieties.[9] We are thus satisfied that there exists no "genuine issue" as to the liability of the named municipality, Fed.R.Civ.P. 56, and we therefore grant summary judgment in its favor.[10]

## VI.

In the interest of further clarity, we briefly delineate the extent to which our award of summary judgment has narrowed the areas of dispute remaining for trial. Plaintiff is still free to assert his constitutional claims brought under § 1983, as well as common law claims, against the two individual arresting officers, Mullens and Dickens. In this regard plaintiff may seek damages under § 1983 and, to the extent warranted, equitable relief against these two individual defendants and the District of Columbia. Plaintiff may not proceed, however, against any defendant with his claims brought directly under the Constitution, for those claims are foreclosed by the alternative available remedy provided by § 1983. Nor may plaintiff seek recovery against Police Chief Turner, Sergeant Battle or the District of Columbia under § 1983 or any other theory of liability for alleged constitutional violations, because of plaintiff's failure to establish a *prima facie* case of supervisory, policymaking or municipal liability, and by virtue of the senior

9. Count three of plaintiff's complaint states a claim for declaratory and injunctive relief against the defendants. The Supreme Court has suggested, and other courts have concluded, that equitable claims are not defeated by pleas of official immunity. *See Wood v. Strickland,* 420 U.S. 308, 314–15 n. 6, 95 S.Ct. 992, 997 n. 6, 43 L.Ed.2d 214 (1975) ("immunity from damages does not ordinarily bar equitable relief as well"); *Minton v. St. Bernard Parish School Bd.,* 803 F.2d 129, 134 (5th Cir.1986); *Rodriguez v. Board of Ed. of Eastchester Union Free School Dist.,* 620 F.2d 362, 366 (2d Cir.1980); *Rowley v. McMillan,* 502 F.2d 1326, 1332 (4th Cir.1974). Judge Bork has explained that officials cannot assert immunity against such claims because "they normally are not personally liable for the costs of complying with an affirmative injunctive decree." *Reuber v. United States,* 750 F.2d 1039, 1065 n. 2 (D.C.Cir.1984) (concurring opinion).

But since we have rejected plaintiff's claims of municipal, supervisory and policymaking liability, there remains no basis on which this court could award equitable relief against Chief Turner, Sergeant Battle or the District of Columbia. Thus we dispose of these claims to the extent that they seek relief against the named defendants and the municipality.

10. Plaintiff also stated common law claims of false arrest, false imprisonment, negligence, abusive process and malicious prosecution. Complaint counts 4–8. Given our disposition of plaintiff's constitutional challenges, we decline to exercise pendent jurisdiction over these state claims insofar as they are addressed toward the subjects of this motion for summary judgment. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Williams v. Bennett,* 689 F.2d at 1379; *Gladden v. Barry,* 558 F.Supp. at 678 n. 1 (exercise of pendent jurisdiction is within court's discretion).

defendants' valid claims of immunity. This court will also not consider plaintiff's pendent state claims against these latter defendants, aside from requests for equitable relief against the District of Columbia on state law grounds.

As required by Rule 52 of the Federal Rules of Civil Procedure, the foregoing shall constitute our findings of fact and conclusions of law.

An order consistent with the foregoing opinion has been entered this day.

## ORDER

Upon consideration of defendants' motion for summary judgment, plaintiff's opposition thereto, the supporting memoranda of points and authorities and the entire record herein, and pursuant to Rule 56 of the Federal Rules of Civil Procedure, it is by the court this 28th day of October, 1987

ORDERED that defendants' motion for summary judgment is hereby granted, and it is

ORDERED that summary judgment is hereby granted in favor of defendants Police Chief Maurice Turner, Jr., Sergeant Joe Battle, and the District of Columbia as to counts one (1), two (2), and three (3) of plaintiff's complaint, and it is

FURTHER ORDERED that this court declines to exercise pendent jurisdiction over state law counts four (4), five (5), six (6), seven (7), and eight (8) of plaintiff's complaint to the extent that those claims are addressed to defendants Police Chief Maurice Turner, Jr., and Sergeant Joe Battle.