**Gerry SCOTT, Appellee,**

v.

**DISTRICT OF COLUMBIA,
et al., Appellants.**

**No. 95–7108.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 16, 1996.

Decided Dec. 6, 1996.

Rehearing Denied Jan. 15, 1997.

750

James C. McKay, Jr., Assistant Corporation Counsel, argued the cause for appellants, with whom Charles F. Ruff, Corporation Counsel, Charles L. Reischel, Deputy Corporation Counsel, and James A. DeVita, Trial Assistant, Washington, DC, were on the briefs. Edward E. Schwab, Assistant Corporation Counsel, Washington, DC, entered an appearance.

Joan A. Harvill argued the cause and filed the brief for appellee.

Before: SILBERMAN, RANDOLPH and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

This is an appeal by the District of Columbia and various members of the Metropolitan Police Department ("MPD") from the denial of a motion for judgment as a matter of law,[1] or in the alternative for a new trial or remittitur, after a jury awarded Gerry Scott compensatory and punitive damages as a result of his encounter with the police on July 9, 1991. Early that morning, a car driven by Scott, then an off-duty member of the MPD, crashed into four parked cars at an intersection on New Hampshire Avenue in Northwest Washington. Scott was subsequently arrested and charged with driving under the influence of alcohol ("DUI"). The DUI charge was ultimately dismissed after a police officer failed to appear for a court hearing, and Scott sued the District of Columbia and several MPD officers, alleging false arrest, malicious prosecution, abuse of process, use of excessive force to effect an arrest, assault and battery, and negligence. A jury found for Scott on the false arrest, excessive force, abuse of process, and negligence claims, and awarded $200,000 in compensatory damages and $300,000 in punitive damages.

The District and the officers (collectively "the District") contend that the evidence was insufficient to support the verdict on Scott's claims. We agree, and therefore reverse the denial of the District's motion for judgment as a matter of law and remand with instructions to enter judgment for the District.[2]

**I.**

Viewed in the light most favorable to Scott, *see Mackey v. United States,* 8 F.3d 826, 829 (D.C.Cir.1993), the evidence at trial showed that at approximately 2:15 a.m. on July 9, 1991, a car driven by Scott hit four unoccupied parked cars at the corner of New Hampshire Avenue and Otis Place. Several police officers responded to the scene; the first to arrive was Officer Mojica. Scott's behavior at the scene of the accident was erratic and belligerent. He acknowledged at trial that he cursed at Officer Mojica, and two people living in the area who observed the accident testified that Scott appeared to be intoxicated. Scott testified that he was not drunk, however, and that his behavior was due to disorientation and confusion as a result of a head injury suffered in the accident. He maintained that the accident occurred when he burned his hand on a piece of fried chicken that he was eating, and lost control of the car. While he acknowledged that he had been drinking several hours prior to the accident, he claimed that the effects of the alcohol had worn off by the time he began driving, at around midnight. He also offered the testimony of a toxicology expert,

---

1. Although the District's motion was styled as a motion for judgment notwithstanding the verdict, the 1991 amendments to Fed.R.Civ.P. 50 abandoned the terms "judgment notwithstanding the verdict" and "judgment n.o.v." The rule now speaks in terms of "judgment as a matter of law," and so do we.

2. In light of our disposition, we do not reach the District's contentions relating to the award of punitive damages and various evidentiary rulings by the district court.

Dr. Leo Goldbaum, who stated that the effects of the alcohol would have worn off, at the latest, by 2 a.m.

Within an hour after the accident, two police lieutenants and two sergeants arrived on the scene. A lieutenant directed Sergeants Francis and Hernandez to take Scott to the MPD's Traffic Division. The sergeants, who were in uniform, did not put Scott in a secure vehicle normally used to transport prisoners that has a cage or a plexiglass screen between the front seats and the rear passenger seats, and rear passenger doors that cannot be opened from the inside. Instead, they placed him in a regular police cruiser. The sergeants also did not handcuff Scott, search him, give him *Miranda*[3] warnings, or advise him that he was under arrest.

While on route to the Traffic Division, Scott became disoriented. He testified that he passed out, and that when he awakened, he did not realize where he was or who the officers were. At the corner of Ninth and T Streets, he attempted to exit the cruiser. Sergeant Hernandez, who was sitting to Scott's right in the back seat of the car grabbed him by the back of his pants to prevent him from escaping. Several police officers arrived on the scene, and Scott told Hernandez that he would get back in the car. Hernandez refused to let him back into the car, and several officers forced Scott to the ground and handcuffed him. At that point, the officers took Scott to the Traffic Division in a secure transport vehicle. Subsequently, at around 5 a.m., he was taken to the hospital, where he was examined, given a muscle relaxant, and referred to a neurologist.

After the accident, Scott was charged with DUI, in violation of D.C.Code § 40–716. The charge was dismissed with prejudice when Officer Mojica failed to appear for a court hearing. The MPD placed Scott on administrative leave. Nearly seven months after the accident, on January 31, 1992, Scott went to see the neurologist, Dr. William Lightfoote.

Dr. Lightfoote examined Scott and reviewed the hospital records from the night of the accident, and concluded that he had suffered a vertebral concussion and a cervical disk herniation as a result of the accident.

Approximately one year after the accident, Scott filed this lawsuit, alleging constitutional false arrest and excessive force claims under 42 U.S.C. § 1983, as well as common law claims for assault and battery, false arrest, malicious prosecution, abuse of process, and negligence. The district court conducted the trial in two phases. In the first phase, the jury found the individual police officers liable for false arrest, excessive force, abuse of process, and negligence, and awarded compensatory and punitive damages. It found for the officers on the assault and battery and malicious prosecution counts. In the second phase, the jury found the District liable for compensatory damages on the constitutional claims.[4] Because the District had previously stipulated that the officers were acting within the scope of their employment, the district court entered a judgment holding the District and the officers jointly and severally liable for all compensatory damages, and holding the officers individually liable for punitive damages. The district court denied the District's motion for judgment as a matter of law, or in the alternative, for a new trial or remittitur, and this appeal followed.

## II.

We review de novo the district court's denial of a motion for judgment as a matter of law. *Ferguson v. F.R. Winkler GMBH & Co.*, 79 F.3d 1221, 1224 (D.C.Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 360, 136 L.Ed.2d 252 (1996); *McFarlane v. Caterpillar, Inc.*, 974 F.2d 176, 178 (D.C.Cir.1992). Thus, the issue on appeal is whether there was sufficient evidence upon which the jury could base a verdict in Scott's favor. *Id.* In making that determination the court views the evidence in the light most favorable to

---

3. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

4. The jury awarded a total of $80,000 in compensatory damages and $103,000 in punitive damages on the excessive force claim, $10,000 in compensatory damages and $63,000 in punitive damages on the false arrest claim, $10,000 in compensatory damages and $134,000 in punitive damages on the abuse of process claim, and $100,000 in compensatory damages on the negligence claim.

Scott and resolves all conflicts in his favor. *Mackey,* 8 F.3d at 829. Although the court cannot substitute its view for that of the jury, and can assess neither the credibility nor weight of the evidence, the jury's verdict can only stand if the evidence in support of it is "significantly probative" and "more than merely colorable." *Ferguson,* 79 F.3d at 1224; *see also Siegel v. Mazda Motor Corp.* 878 F.2d 435, 437 (D.C.Cir.1989). In other words, the jury's verdict will withstand challenge unless the evidence and all reasonable inferences that can be drawn therefrom are so one-sided that reasonable men and women could not disagree on the verdict. *Mackey,* 8 F.3d at 829 (citing *McNeal v. Hi–Lo Powered Scaffolding,* Inc., 836 F.2d 637, 640–41 (D.C.Cir.1988)).

■ Under Rule 8(e)(2) of the Federal Rules of Civil Procedure, Scott could properly plead alternative theories of liability, regardless of whether such theories were consistent with one another. Similarly, Scott could properly argue alternative claims to the jury. *See, e.g., Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.,* 30 F.3d 339, 343 (2d Cir.1994). Recovery of damages, however, cannot be based on inconsistent theories when one theory precludes the other or is mutually exclusive. *Brookhaven Landscape & Grading Co. v. J.F. Barton Contracting Co.,* 676 F.2d 516, 523 (11th Cir. 1982); *Fredonia Broadcasting Corp. v. RCA Corp.,* 481 F.2d 781, 801 (5th Cir.1973). In support of the judgment Scott maintains on appeal that the police officers did not place him under arrest at the accident scene, and that, consequently, he was free to leave at any time. This position is consistent with his testimony at trial. Scott testified that he did not believe he was under arrest, and that he was simply being transported to the Traffic Division for administrative purposes. Similarly, Scott's expert in police practices, Dr. Alvin Cohn, testified that, in his opinion, Scott was not under arrest because the officers did not handcuff him, search him, place him in a secured vehicle, tell him he was under arrest, or read him *Miranda* warnings. Furthermore, in closing argument Scott's attorney told the jury that Scott was not under arrest, and that he "had every right in the world to get out of the car and walk away."

Many of the jury's determinations, however, can only rest on a finding that Officer Mojica arrested Scott at the accident scene. For example, the jury found Officer Mojica liable for false arrest. Scott also argued that the officers were negligent in failing to handcuff him or place him in a transport vehicle when the police first tried to take him to the Traffic Division. To the extent that the jury verdict against Officer Mojica on the negligence count rested on this theory, it was logically inconsistent with Scott's assertion that he was not under arrest. Of course, Scott had a sound tactical reason for arguing to the jury that he was not arrested until after he attempted to exit the police cruiser. Scott's own testimony established that he was disoriented and confused, and the neighborhood residents who observed the crash testified that he was belligerent and that he appeared to be intoxicated. By having his counsel argue to the jury that the officers did not arrest him at the accident scene, Scott undercut the District's argument that his aggressive behavior justified the officers' actions, and strengthened his excessive force claim.

■ For purposes of appellate review, however, Scott cannot have it both ways at once. If he was not under arrest for the purposes of the excessive force claim, then he cannot recover on his other claims on the theory that he was under arrest. Indeed, on appeal, Scott does not expressly assert that Officer Mojica arrested him. Because Scott could not recover damages on separate theories for different claims where one theory precluded the other, *Brookhaven Landscape & Grading Co.,* 676 F.2d at 523, we abide by Scott's position, expressed both at trial and on appeal, that he was not arrested until after he attempted to exit the cruiser at the corner of Ninth and T Streets, and we review the sufficiency of his claims on that basis.

### A.

■ **False Arrest.** The elements of a constitutional claim for false arrest are substantially identical to the elements of a common-law false arrest claim. *Dellums v. Pow-*

*ell,* 566 F.2d 167, 175 (D.C.Cir.1977). For either type of claim, "[t]he focal point of the action is the question whether the arresting officer was justified in ordering the arrest of the plaintiff; if so, the conduct of the arresting officer is privileged and the action fails." *Id.* The instant case differs from the usual false arrest claim in a key respect, however. Most false arrest claims turn on the issue of whether the arresting officer had probable cause to believe that the arrestee committed a crime. *See, e.g., Martin v. Malhoyt,* 830 F.2d 237, 262–63 (D.C.Cir.), *reh'g denied,* 833 F.2d 1049 (D.C.Cir.1987). Here, there is no serious question as to that issue. Scott's erratic behavior, which his own medical expert described as consistent with intoxication, coupled with the fact that his vehicle had crashed into four parked cars, would lead any reasonable police officer to conclude that he had been driving under the influence of alcohol, regardless of whether he had actually committed that offense. Scott's false arrest claim hinges on a technicality of District of Columbia law. At the time of the arrest, the District adhered to the common-law rule that an officer was not authorized to arrest a suspect for a misdemeanor without a warrant unless the offense was committed in the officer's presence. D.C.Code§ 23–581(a)(1)(B) (1989).[5] Even though Officer Mojica had probable cause to believe that Scott was guilty of DUI, he lacked authority to make an arrest under District law if he did not see Scott operate the vehicle. *See Schram v. District of Columbia,* 485 A.2d 623, 624 (D.C. 1984).

It is far from clear that these circumstances implicate a violation of the Fourth Amendment that can give rise to a constitutional false arrest claim under § 1983. The Fourth, Fifth, and Ninth Circuits have held that the Fourth Amendment does not incorporate the common-law presence requirement for misdemeanor arrests, and that no cause of action exists under § 1983 unless the arresting officer lacked probable cause to believe a crime was committed. *Street v.*

*Surdyka,* 492 F.2d 368, 371–73 (4th Cir.1974); *Fields v. City of South* Houston, 922 F.2d 1183, 1189 (5th Cir.1991); *Barry v. Fowler,* 902 F.2d 770, 772 (9th Cir.1990); *see also Welsh v. Wisconsin,* 466 U.S. 740, 756, 104 S.Ct. 2091, 2101, 80 L.Ed.2d 732 (1984) (White, J. dissenting). We need not decide this issue, however, because Scott pleaded both constitutional and common law false arrest claims, and in view of the identity of the underlying allegations, the constitutional claim cannot stand if the common law claim fails for lack of sufficient evidence. We therefore analyze the false arrest claim solely with reference to District of Columbia law.

Initially, it is clear that Scott's false arrest claim against Officer Mojica is fatally undercut by his assertion that he was not arrested at the accident scene. Scott testified that he never saw Officer Mojica after he was placed in the cruiser. If Scott was not arrested until after he tried to exit the cruiser, then Officer Mojica did not arrest him. The District was therefore entitled to judgment on the false arrest claim against Officer Mojica.

Sergeants Francis and Hernandez, the other individual defendants to Scott's false arrest claim, are in a different position. They were present at the corner of Ninth and T Streets when Scott exited the cruiser. Furthermore, the evidence showed that even if Scott was not under arrest when he left the accident scene, he was under arrest by the time he left Ninth and T Streets. At that point, the sergeants had handcuffed him and placed him in a secure transport vehicle; in no sense was he free to leave. Thus, the jury could reasonably have found that Francis and Hernandez did arrest Scott at the corner of Ninth and T Streets.

■ Nonetheless, the judgment on the false arrest claim against Sergeants Francis and Hernandez cannot stand. Under District of Columbia law, a police officer may justify an arrest by demonstrating that "(1) he or she believed, in good faith, that his or her conduct was lawful, and (2) this belief

---

**5.** The District of Columbia Code has since been amended to permit an officer to make a warrantless arrest for DUI, regardless of whether the offense is committed in his presence, if the officer has "reasonable grounds to believe that, un-

less the person is immediately arrested, reliable evidence of alcohol or drug use may become unavailable or the person may cause personal injury or property damage." D.C.Code § 23–581(a)(1)(D) (1996).

was reasonable." *District of Columbia v. Murphy*, 631 A.2d 34, 36 (D.C.) (citations and internal quotation marks omitted), *on reh'g*, 635 A.2d 929 (D.C.1993). The only evidence before the jury indicated that Sergeants Francis and Hernandez had a reasonable, good faith belief that Scott was in their custody and that they were entitled to prevent his escape. With respect to the key details of the events following the accident, the testimony of the two sergeants is in accord with Scott's own account. Scott testified that one of the police lieutenants who arrived on the scene had ordered him to report to the Traffic Division, so that a test could be administered, and that the lieutenant instructed Francis and Hernandez to transport him. Francis offered a similar account, testifying that the lieutenant spoke with Scott, and then directed the two sergeants to take Scott to the Traffic Division, but not to handcuff him or to use a secure vehicle. Hernandez testified that the lieutenants on the scene told the sergeants to take Scott to the Traffic Division to administer a breathalyzer test and revoke Scott's police powers; he also testified that Scott had asked not to be handcuffed, and that the lieutenant had told them they did not have to handcuff him. Both sergeants testified that they understood Scott to be under arrest at the time.

Thus, the undisputed evidence establishes that Sergeants Francis and Hernandez were acting at the direction of a police lieutenant, who had ordered them to transport Scott to the Traffic Division so that he could take a breathalyzer test. The sergeants had ample probable cause to believe that Scott was guilty of DUI, given that Scott had crashed his car and was acting in a manner consistent with intoxication. Because the sergeants arrived on the scene after Officer Mojica, they could not have known from their own observations that he did not observe Scott operating or attempting to operate his vehicle, and that an arrest for DUI was not authorized under District of Columbia law. Under these circumstances, the sergeants were entitled to conclude that Scott was not free to leave, and to use reasonable force to prevent his escape from the cruiser. Because no reasonable jury could find to the contrary, the District was entitled to judgment on the

false arrest claims against Officers Francis and Hernandez.

**B.**

■ **Abuse of Process.** The District also contends that Scott failed either to plead or prove a cause of action for abuse of process. Scott's theory at trial, which he pursues on appeal, is that the officers committed an abuse of process by instituting criminal proceedings against him for DUI with the ulterior aim of covering up their use of excessive force. Because this theory, as well as the evidence before the jury, fails to state a claim for abuse of process, the judgment on that count cannot stand as a matter of law.

■ The essence of the tort of abuse of process is the use of the legal system "to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be required to do." *Bown v. Hamilton*, 601 A.2d 1074, 1079 (D.C. 1992); *see also Heck v. Humphrey*, 512 U.S. 477, —— n. 5, 114 S.Ct. 2364, 2372 n. 5, 129 L.Ed.2d 383 (1994); *Bd. of Educ. v. Farmingdale Classroom Teachers Ass'n*, 38 N.Y.2d 397, 380 N.Y.S.2d 635, 343 N.E.2d 278 (1975). As the *Restatement of Torts* makes clear, the fact that a person acts spitefully, maliciously, or with an ulterior motive in instituting a legal proceeding is insufficient to establish abuse of process:

[T]here is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant. Thus, the entirely justified prosecution of another on a criminal charge, does not become abuse of process merely because the instigator dislikes the accused and enjoys doing him harm....

For abuse of process to occur there must be use of the process for an immediate purpose other than that for which it was designed and intended. The usual case of abuse of process is one of some form of extortion, using the process to put pressure upon the other to compel him to

pay a different debt or to take some other action or refrain from it.

RESTATEMENT (SECOND) OF TORTS § 682 cmt. b (1977).

The evidence before the jury was insufficient to establish abuse of process. The fact that the officers expected to realize some benefit by covering up their own alleged wrongdoing simply points to an ulterior motive, not the kind of perversion of the judicial process that gives rise to a cause of action for abuse of process. In *Bown,* the District of Columbia Court of Appeals considered an abuse of process claim in which a tenant alleged that her landlord sought to evict her so as to deprive her of her right to exercise an option to rent a separate basement apartment. The court held that this allegation, on its own, did not state a claim for abuse of process because "in addition to ulterior motive, there must have been a 'perversion of the judicial process and achievement of some end not contemplated in the regular prosecution of the charge.'" [6] 601 A.2d at 1080 (quoting *Morowitz v. Marvel,* 423 A.2d 196, 198 (D.C.1980)). In the instant case, the officers instituted the criminal charge for precisely the purpose for which it was intended: establishing that Scott was guilty of a criminal offense. Scott does not contend that the filing of criminal charges was intended to pressure him into taking any action or prevent him from taking action, or to achieve any other collateral purpose. Therefore, because no reasonable jury could have found that Scott established the essential elements of abuse of process, the District was entitled to judgment on that claim.

*Neumann v. Vidal,* 710 F.2d 856 (D.C.Cir. 1983), on which the district court relied, is not to the contrary. In that case, Neumann, a mechanical engineer, filed a patent application, and began preparations to market his product to the public. *Id.* at 858. A former employer sued him, alleging, *inter alia,* mis-appropriation of trade secrets and breach of fiduciary duty, and as a result, potential investors withdrew from Neumann's venture and his patent application suffered procedural delays. Neumann ultimately prevailed in the lawsuit, and then sued the employer for antitrust violations and abuse of process. Ruling that he was barred by res judicata and collateral estoppel from raising the abuse of process claim, the district court granted summary judgment for the employer. *Id.* This court reversed, holding that Neumann was not precluded from raising the abuse of process claim. *Id.* at 860–61. The holding in *Neumann,* therefore, did not turn on the merits of the abuse of process claim. To the extent that *Neumann* may be read as a comment on the merits, it is readily distinguishable from the instant case. In *Neumann,* the plaintiff did allege a collateral purpose to the litigation: the alleged goal of the employer's lawsuit was to stifle competition by dissuading third parties from investing in the plaintiff's business venture, and to delay his patent application. Thus, the claim in *Neumann,* unlike that in the instant case, involved the type of extortionate activity that the *Restatement* and the case law describe.

## C.

**Negligence.** The District also contends that Scott failed to prove negligence. In response, Scott offers a number of justifications to support the jury's conclusion that the officers were negligent. We address, however, only those theories of negligence that Scott presented at trial and the court instructed to the jury, *cf. Short v. UMW 1950 Pension Trust,* 728 F.2d 528, 532 n. 6 (D.C.Cir.1984): first, that the officers should have handcuffed Scott and placed him in a secure transport vehicle, and second, that the officers should have obtained prompt medical treatment for his injuries. Because the evidence was insufficient to establish negligence

---

**6.** The district court's instruction to the jury failed to make this distinction in Scott's case. The court instructed:

> In order to establish abuse of process, the plaintiff must demonstrate that the defendant used illegal processes for improper purposes in order to achieve an end not anticipated in the regular prosecution of the charge, that they

proceeded against him for some ulterior reason.

Because the District did not note the failure of the instruction to inform the jury of an essential element of abuse of discretion either at trial or in its brief on appeal, however, we focus on the sufficiency of the evidence to support a claim of abuse of process.

under either of these theories, the District was entitled to judgment on the negligence claim.

■ Scott's first theory of negligence is plainly inadequate to support the judgment. As to Officer Mojica, this theory suffers from the same defect as the false arrest claim: it is inconsistent with Scott's assertion that he was not arrested until he tried to exit the police cruiser at Ninth and T Streets. Scott cannot plausibly maintain that he was free to leave the accident scene and argue at the same time that good police practice required Officer Mojica to handcuff him and place him in a vehicle from which he could not escape. Scott's expert in police procedures, Dr. Cohn, did not testify that police officers have any duty to handcuff or otherwise confine persons who are not under arrest, and Scott points to no other record evidence to support this peculiar theory. Furthermore, this theory cannot support the negligence verdict against the officers who were not present at the accident scene, but who participated in the arrest at Ninth and T Streets, because Scott was handcuffed and placed in a secure transport vehicle at that time.

Scott maintains, however, that if Sergeants Francis and Hernandez believed that he was under arrest, they should have handcuffed him and placed him in a secure vehicle. Scott offered no evidence to support this assertion. Dr. Cohn testified that the MPD's general orders do not require officers to handcuff persons arrested for misdemeanors unless the individuals are violent or aggressive. Both sergeants testified that their lieutenant directed them not to handcuff Scott and to transport him in a regular vehicle, and Scott offered no testimony to rebut this as-

sertion. Given Scott's testimony that he was not violent or aggressive toward the officers, he cannot plausibly maintain that his behavior was so out-of-control that the sergeants were required to handcuff him despite their lieutenant's explicit instructions.

■ As to Scott's second theory of negligence, Scott failed to produce evidence of an applicable standard of care that required the officers to obtain immediate medical treatment for a person in Scott's position. It is well settled under District of Columbia law that a plaintiff in a negligence action must establish three elements: an applicable standard of care, a deviation from that standard by the defendant, and injury resulting from that deviation. *Toy v. District of Columbia*, 549 A.2d 1, 6 (D.C.1988). Failure to prove a standard of care is thus fatal to a negligence claim. *District of Columbia v. Carmichael*, 577 A.2d 312, 314 (D.C.1990). Furthermore, where the alleged negligent act is not "within the realm of common knowledge and everyday experience," proof of the applicable standard of care must be established by expert testimony. *Toy*, 549 A.2d at 6 (quoting *District of Columbia v. White*, 442 A.2d 159, 164 (D.C.1982)).

Scott did not offer evidence of an applicable standard of care that would have required the officers to secure immediate medical care for him. His expert, Dr. Cohn, testified primarily as to the standards embodied in municipal regulations and the MPD's general orders.[7] Scott has not identified anything in either the regulations or the general orders, however, mandating that officers provide medical care where, as here, there is no visible evidence of injury or complaint by the person arrested.[8] Although Dr.

---

7. The District of Columbia Court of Appeals has held that the MPD's general orders, which are issued by the Chief of Police pursuant to a regulation, D.C. Mun. Reg. tit. 6A, § 800.3 (1988) "essentially serve[] the purpose of an internal operating manual," and lack the force or effect of a statute or regulation. *Abney v. District of Columbia* 580 A.2d 1036, 1041 (D.C.1990). Scott maintains that, as such, a violation of the general orders may serve as evidence of negligence. The District responds that the general orders do not suffice to establish a standard of care, absent other evidence that they conform to a national standard. We need not resolve this

issue, however, because Scott has not identified any general orders that required the officers to provide him with prompt medical care, based on what they were able to observe at the accident scene.

8. D.C. Mun. Regs. tit. 6A, § 200.19 (1988) provides that:

In all cases of accident or illness requiring an officer's attention, members of the force shall render prompt assistance, taking any action as may be necessary in the premises.

In addition, D.C. Mun. Regs. tit. 6A, § 700.4 (1988) provides that:

Cohn did note that the MPD's standards are very similar to standards developed by the national Commission on Law Enforcement Accreditation Standards, his testimony indicates that the Commission's standards simply require police departments to have written policy guidelines, without specifying the content of any standards to which the guidelines must adhere. This point was corroborated by the District's expert in police procedures, Dr. Laurence Sherman, who acknowledged, during cross-examination by Scott's counsel, that the applicable Commission regulation merely requires that police departments have written rules that define when injured persons must be taken to medical facilities, and no more. Dr. Cohn offered no evidence of practices of police departments in other jurisdictions. *See District of Columbia v. Peters,* 527 A.2d 1269, 1273 (D.C.1987).

Dr. Cohn's testimony was insufficient to enable a jury reasonably to conclude that the officers breached a duty of care as to Scott. Had Dr. Cohn testified that, in his opinion, based on a reasonable degree of professional certainty, a recognized standard of care required that the officers investigating the accident scene should have immediately taken Scott to the hospital, the evidence would have been sufficient to support the verdict. Yet in his testimony, Dr. Cohn referred to a standard of care governing medical treatment on only a few occasions. He did not allude to any recognized standard of care that would have required the officers to obtain medical care for Scott, despite the fact that Scott neither complained of pain nor appeared to suffer from any serious injuries. In contrast, Dr. Sherman testified that the officers were under no duty to transport Scott to a hospital, as evidenced by the following exchange:

[Counsel for the District]. All right. Would the national standard of care have required that the officers in this case immediately transport Officer Scott to a hospital rather than to the Traffic Division?

[Dr. Sherman]. No. In this case where the testimony that I have reviewed is consistent that there is no visible injury and there was no complaint of pain by the plaintiff until after going to the Traffic Division, and according to Sergeant Schaefer's testimony, as my recollection, after he'd been there 30 minutes, that without the complaint of pain and without visible injury that's visible without taking clothes off and doing a medical exam, police officers, under national practices with which I'm familiar from 25 years of observations, police officers are not under any duty to transport people involved in accidents to a hospital simply because they've been involved in an accident. Again, you have to have that visible sign of injury or complaint of pain.

Of course, if Dr. Cohn's testimony had directly contradicted Dr. Sherman's assertion on this point, the jury would have been entitled to credit his testimony over Dr. Sherman's. But in the absence of any statement by Dr. Cohn that a national or other standard of care required that a person in Scott's position be taken immediately to the hospital, no reasonable jury could have found that the officers' conduct deviated from the applicable standard of care. Hence, the District was entitled to judgment on the negligence claim.

### D.

**Excessive Force.** The District also contends that the evidence was insufficient to establish that the police used excessive force against Scott in arresting Scott at the corner of Ninth and T Streets. The relevant inquiry in a constitutional excessive force claim stemming from an arrest is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989). The subjective

---

Where the condition of a prisoner is such that it is difficult to determine whether he or she is ill or intoxicated, or when a prisoner is taken ill in a station, he or she shall be immediately conveyed to a hospital.
Neither of these provisions indicates that the officers were under an obligation to transport

Scott to the hospital. The first only requires officers to take such actions as they deem necessary, and the second is directed toward situations in which an officer cannot make a reasonable determination as to whether a prisoner requires immediate medical care.

"good faith" of the officers is irrelevant. *Id.* Even where an officer's use of force is motivated by malice, a plaintiff cannot demonstrate excessive force if the mode of arrest is one that a reasonable officer might have applied. *Id.; see also Martin,* 830 F.2d at 262. Nor, in this circuit, is good faith a relevant consideration in determining whether qualified immunity shields an officer from liability for damages. *Wardlaw v. Pickett,* 1 F.3d 1297, 1303 (D.C.Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2672, 129 L.Ed.2d 808 (1994); *cf. Graham,* 490 U.S. at 399 n. 12, 109 S.Ct. at 1873 n. 12. Instead, the issues of whether an officer used excessive force and whether an officer is entitled to qualified immunity are determined according to a single standard. For both issues, the proper question for the jury is whether "the excessiveness of the force is so apparent that no reasonable officer could have believed in the lawfulness of his actions." *Wardlaw,* 1 F.3d at 1297.

■ Although we evaluate the reasonableness of the officers' actions by viewing the events from their perspective, we consider the facts in the record and all reasonable inferences derived therefrom in the light most favorable to Scott. *Id.* at 1303. Scott testified that when he attempted to exit the police cruiser at the corner of Ninth and T Streets, Sergeant Hernandez grabbed him by the back of his pants to prevent his escape. As soon as Scott saw the other police cars arrive, he offered to get back in the car. Hernandez responded by cursing at Scott, and telling him he could not get back in the car because he "would probably do something stupid like kick the windows out." At about the same time, Officer Cannon, who had arrived in one of the other cars, struck Scott once, knocking him off balance and causing him to bend over and to raise his arms by the side of his head in a "defensive manner." At this point, Scott began screaming that he was a police officer and that he had not done anything wrong. Cannon and Officer Spriggs then grabbed Scott and "slammed" him to the ground. Scott hit the

ground on his back, and the officers proceeded to roll him over, putting their knees on his neck, back, and lower legs. The officers handcuffed him and "dragged" him to a police transport vehicle. At least five officers were involved in this confrontation: Hernandez, Cannon, Spriggs, and Officers LeBoo and Nelson.[9]

Viewing this confrontation, as we must, from the perspective of a police officer on the scene "in a quickly developing situation," *Martin,* 830 F.2d at 261, we conclude that the degree of force used to arrest Scott was not so excessive that no reasonable officer could have believed in the lawfulness of his actions. As discussed in connection with the false arrest claim, *see supra* Part II.A, Sergeant Hernandez reasonably believed that Scott was under arrest and in his custody. Under these circumstances, he was entitled to use reasonable force to prevent Scott from escaping. The fact that Scott offered to return to the police cruiser did not eliminate the need for force. Hernandez could reasonably conclude at that point that he needed to place Scott in restraints, to prevent him from escaping a second time. Furthermore, given Scott's erratic behavior, it was reasonable for Hernandez, who was in the back seat of the car, to seek assistance from other officers in subduing Scott who was outside of the car.

Again, viewing the confrontation from an "objectively reasonable" standpoint, Scott's description of the level of force used by the officers does not indicate that it was excessive. Scott essentially testified that Cannon struck him once, and that the officers then knocked him to the ground, rolled him over, and pinned him with their knees so that he could be handcuffed. Although Scott repeatedly testified that the officers were "beating" him with their knees, he did not indicate that anyone ever kicked him or struck him, apart from the one blow delivered by Officer Cannon. Even were the measures that the officers employed to appear excessive "with the 20/20 vision of hindsight," *Graham,* 490 U.S. at 396, 109 S.Ct. at 1872, the Supreme Court has instructed that

9. Sergeant Francis, who was driving the police cruiser that Scott attempted to exit, did not take part in the physical confrontation.

"[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* (citations and internal quotations omitted).

Under a "reasonableness" standard balancing the infringement of the individual's interest caused by the police action against the governmental interest served by that action, this court held in *Martin* that the plaintiff, a limousine driver waiting to pick up passengers, had failed to show excessive force where a police officer "'brutally grabbed'" him around the waist as he was attempting to respond to the officer's request for his license and vehicle registration, threw him into the drivers seat, and slammed the car door on his leg. 830 F.2d at 240, 262. While acknowledging that slamming the car door on the plaintiff's leg appeared to be malicious and "causes us to pause," the court concluded that the officer's "total conduct, objectively appraised, added up to a reasonable mode of arrest." *Id.* at 262. In *Wardlaw*, the court concluded that no reasonable jury could find excessive force was used where the plaintiff rushed at two United States Deputy Marshals who were forcibly removing a friend of his from a courtroom, and one of the deputies punched the plaintiff once in the jaw and two or three times in the chest. 1 F.3d at 1300, 1303–04. The court noted the circumstances of enhanced security at the courthouse as a result of anticipated demonstrations, the vulnerability of the marshals in the stairwell, and the fact that the plaintiff had shouted at the deputies not to hurt the spectator as he came toward them. *Id.* at 1304.

As in *Martin* and *Wardlaw*, the proper inquiry here is whether the officers' actions were so excessive that no reasonable officer on the scene could have believed that they were lawful. All of the officers' actions were reasonably calculated toward the goal of securing Scott and placing him in handcuffs, while minimizing his opportunity to escape. Nothing in the record indicates that they used more force than reasonably appeared necessary to achieve that goal. To the contrary, the evidence indicates that following his release from the hospital, Scott did not consider it necessary to seek further medical attention. *Cf. Wardlaw,* 1 F.3d at 1304 & n. 7. Even when he went to see Dr. Lightfoote six months later, he claimed only that he had been injured in a car accident and did not mention a subsequent confrontation with the police. We conclude, therefore, that the jury could not reasonably find for Scott on the excessive force claim, absent some consideration of improper matters such as the subjective intent of the officers.

### III.

When an appellate court determines that a district court erred in denying a party's motion for judgment as a matter of law, it has three options. It can direct the district court to enter judgment for that party, order a new trial on its own motion, or remand the case to the district court to determine whether a new trial is appropriate. *Neely v. Martin K. Eby Construction Co.,* 386 U.S. 317, 329, 87 S.Ct. 1072, 1080, 18 L.Ed.2d 75 (1967); *see also* Fed.R.Civ.P. 50(d). Because the facts, viewed in the light most favorable to Scott, indicate that he cannot recover on any of his claims, there is no basis for affording Scott a new trial. Accordingly, we reverse the order denying the District's motion for judgment as a matter of law, vacate the judgment for Scott, and remand the case with instructions to enter judgment for the District.