

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-28-2002

# Istvanik v. Rogge

Precedential or Non-Precedential: Non-Precedential

Docket No. 01-3395

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Istvanik v. Rogge" (2002). *2002 Decisions.* Paper 672.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/672

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No:  01-3395

JOSEPH F. ISTVANIK; ELAINE J.
PASSALACQUA, H/W,

v.

MICHAEL ROGGE, Officer; JOHN DOE, Officer;
KENNETH BRIGHT, Police Chief; LARRY COMMUNALE,
Township Manager; LOWER GWYNEDD TOWNSHIP;
RICHARD LAWN, Officer

Joseph F. Istvanik,
Appellant

No:  01-3536

JOSEPH F. ISTVANIK; ELAINE J.
PASSALACQUA, H/W

v.

MICHAEL ROGGE; KENNETH BRIGHT,
Police Chief; LARRY COMMUNALE,
Township Manager; LOWER GWYNEDD
TWP; RICHARD LAWN, Officer;

Michael Rogge,
Appellant

Appeals from the United States District Court
for the Eastern District of Pennsylvania
(Civil No 98-CV-4029)
District Court Judge: Hon. R. Barclay Surrick

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 20, 2002

Opinion Filed:  October 28, 2002

Before: SCIRICA, ALITO and McKEE, <u>Circuit Judges</u>.

OPINION

McKEE, <u>Circuit Judge</u>.

The principal issue we must resolve in these appeals is whether the district court was

correct in finding that Police Officer Michael Rogge had qualified immunity in this § 1983

civil rights action. For the reasons that follow, we will affirm.

**I.**

Because we write only for the parties, it in not necessary to recite the facts or

history of this case.  Rather, it is sufficient to note that Joseph F. Istvanik filed a § 1983

action against Officers Rogge and Lawn of the Lower Gwynedd Township Police

Department claiming that they used excessive force by handcuffing him too tightly to the

leg of a cot for several hours while he was in a holding cell at the police station.[1]  He also

asserted state law claims for assault, battery and false imprisonment.  Rogge filed a motion

to dismiss under Fed.R.Civ.P. 12(b)(6), claiming that he was entitled to qualified

immunity.[2]  However, the district court denied the motion.  Rogge also made a motion for

---

[1]Istvanik was arrested for driving under the influence of alcohol.  At trial, Istvanik
conceded that the police had probable cause to stop his car and to arrest him.

[2]Under the doctrine of qualified immunity, "[g]overnment officials performing
discretionary functions are shielded from liability for civil damages insofar as their
conduct does not violate clearly established statutory or constitutional rights that a

2

judgment as a matter of law at the close of Istvanik's case pursuant to Fed. R. Civ. P. 50(a), asserting, *inter alia*, qualified immunity.

A jury found in favor of Rogge on the state law claims and in favor of Istvanik on his § 1983 claim.   It also found in favor of Lawn on all claims.

Rogge filed a post-trial motion under Fed.R.Civ.P. 50(b) asserting, *inter alia*, that the district court erred by not granting him qualified immunity.[3]   On August 23, 2001, the district court granted Rogge's judgment as a matter of law finding that he was entitled to qualified immunity.

These appeals followed.

## II.

The district court, noting that Istvanik had not yet been charged with a crime when his right to be free from excessive force was allegedly violated, held that the Fourth Amendment's "objective reasonableness" standard applied to Istvanik's § 1983 claim.[4]   *See Graham v. Connor*, 490 U.S. 386 (1989).   Therefore, when Rogge first raised the issue of qualified immunity in his Rule 50(a) motion, the district court followed  the majority of

---

reasonable person would have known." *Sharrar v. Felsing*, 128 F.3d 810, 826 (3d Cir. 1997) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The inquiry when a defendant claims qualified immunity is "whether a reasonable officer could have believed that his or her conduct was lawful, in light of the clearly established law and the information in the officer's possession." *Sharrar*, 457 U.S. at 826.  Officers who reasonably but mistakenly conclude that their conduct is lawful are entitled to immunity.  *Id*.

[3]Rule 50(b) provides for post-trial renewal of motions made under Rule 50(a).

[4]Rogge had argued that the Fourteenth Amendment's "shocks the conscience" test should be applied to Istvanik's excessive force claim.

3

courts of appeals that had ruled on that issue. The court reasoned that the standard for Fourth Amendment excessive force claims and the standard for qualified immunity collapse into a single objective reasonableness inquiry that must be decided by the jury. Under this majority view, a finding of excessive force precludes a finding of qualified immunity. *See Katz v. U.S.*, 194 F.3d 962, 968 (9th Cir. 1999), *overruled by Saucier v. Katz,* 533 U.S. 194 (2001); *Bass v. Robinson*, 167 F.3d 1041, 1051 (6th Cir. 1999); *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999); *Frazell v. Flanigan*, 102 F.3d 877, 886-887 (7th Cir. 1996); *Scott v. District of Columbia*, 101 F.3d 748, 759 (D.C.Cir. 1996); *Mick v. Brewer*, 76 F.3d 1127, 1135 n.5 (10th Cir. 1996); *Rowland v. Perry*, 41 F.3d 167, 173 (4th Cir. 1994). The district court therefore denied Rogge's Rule 50(a) motion and ultimately submitted the issue of his objective reasonableness to the jury. The jury concluded that Rogge used excessive force. Rogge then filed a post-trial motion under Rule 50(b) arguing once again that he was entitled to qualified immunity. However, before the district court ruled, the Supreme Court decided *Saucier v. Katz,* 533 U.S. 194 (2001), in which the Court clarified the relevant analysis.[5] As we noted in *Bennett v. Murphy*, 274 F.3d 133, 137 (3d Cir. 2002), *Saucier* clarified that "the immunity analysis is distinct from the merits of the excessive force claim." The two analyses no longer collapse into a single objective reasonableness inquiry for the jury. Instead, claims of qualified immunity arising in the

---

[5]The *Saucier* decision addressed the qualified immunity defense in the context of a *Bivens v. Six Unknown Named Agents of the Federal Bureau of Investigation*, 403 U.S. 388 (1971) claim. However, the *Saucier* analysis is equally applicable to § 1983 actions. *Bennett v. Murphy*, 274 F.3d 133, 136 n.4 (3d Cir. 2002).

context of excessive force claims are analyzed under a two-step process. The first step is to determine whether the facts, taken in the light most favorable to the plaintiff, show a constitutional violation. *Saucier v. Katz*, 533 U.S. at 201. If the plaintiff fails to establish a constitutional violation, the inquiry ends and the officer is entitled to qualified immunity. *Id*. However, if a constitutional violation could be made out under a favorable view of the plaintiff's submissions, the court must then determine whether the constitutional right was clearly established. *Id*. The focus in the second step is purely legal. "If it would not have been clear to a reasonable officer *what the law required* under the facts alleged, he is entitled to qualified immunity." *Bennett v. Murphy*, 274 F.3d at 136-137 (emphasis in original).

In adjudicating Rogge's Rule 50(b) motion for judgment as a matter of law, the district court applied *Saucier*'s two-step process and held that Rogge was entitled to qualified immunity, and therefore granted Rogge's motion for judgment as a matter of law.[6] Istvanik now argues that the district court's grant of summary judgment should be reversed because the district court improperly applied *Saucier*'s two-step analysis retroactively. We disagree.

---

[6]"We exercise plenary review over the district court's denial of. . . motions for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(a) and 50(b). . . .
Such a motion should be granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability. In determining whether the evidence is sufficient to sustain liability, the court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version." *McDaniels v. Flick*, 59 F.3d 446, 453 (3d Cir. 1994) (citations omitted).

The majority of the cases upon which Istvanik relies for his retroactivity argument address the retroactive application of a new rule on collateral review of a criminal conviction, and they therefore do not apply in this civil case.  Significantly, he ignores *Harper v. Virginia Dept. of Taxation*, 509 U.S. 86 (1993), in which the Court held that when it announces a new rule in a civil case it is to be applied to all cases which are on direct appeal.  The Court wrote:

> When this Court applies a federal rule to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule.

*Id*. at 97; *see also Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749 (1995) (affirming rule in *Harper)*.

In light of *Harper* and the procedural posture of this case, it is clear that *Saucier*, to the extent that it did announce a new rule, is the controlling law and was properly applied by the district court.  *Saucier* was decided while Istvanik's case was still open in the district court, and *Harper* requires that a new rule is to be applied to cases still on direct appeal. *See Bennett*, 274 F.3d at 136 (Because *Saucier* was decided while the appeal was pending, we applied *Saucier*'s two-step analysis to the facts before us and remanded to the district court to apply the second step).  Therefore, the district court did not err by applying *Saucier*'s two-step analysis to Rogge's Rule 50(b) motion.

We also reject Istvanik's argument that the district court improperly applied the *Saucier* analysis.  The heart of Istvanik's excessive force claim is that Rogge applied the

6

handcuffs too tightly when he was double-cuffed to a steel cot in the holding cell. In its *Saucier* analysis, the district court found that the first step was answered by the jury's finding that Rogge's actions constituted excessive force in violation of Istvanik's Fourth Amendment rights. In its analysis of the second step, i.e., whether the constitutional right was clearly established, the district court fully surveyed the state of the law and determined that, at the time of the incident, the question of whether tight handcuffing constitutes a violation of Fourth Amendment rights against excessive force was not established even in a general sense. Therefore, it clearly was not established in the particularized sense required for qualified immunity.[7]

We find no error in the district court's *Saucier* analysis. Quite frankly, if the various circuit courts of appeals and the district courts disagree on the question, we can hardly fault Officer Rogge, especially since it is apparent that he was dealing with a thoroughly uncooperative person who had been arrested for drunk driving.

In addition to his arguments centering on *Saucier*, Istvanik also argues that the district court abused its discretion by weighing evidence, determining the credibility of witnesses and substituting its version of the facts for the jury's when it ruled on Rogge's post-trial motion for judgment as a matter of law. We again disagree.

Istvanik's argument focuses on three sentences in the district court's twenty-five page opinion. The first sentence is pulled from the middle of a paragraph at the end of the

---

[7]We have not had the occasion to address the issue of whether tight handcuffing can violate Fourth Amendment protections against excessive force.

opinion as the district court was summing up its discussion. The district court noted that "[t]here is nothing in Plaintiff's testimony from which this Court can conclude that Plaintiff was repeatedly complaining of pain and Officer Rogge callously ignored these complaints." App. at 37. Istvanik argues that this statement is false because he testified that he was in pain while double-cuffed. However, Istvanik has taken the district court's statement out of context. The district court was referring to the time after Istvanik had been double-cuffed, while he sat on the floor of the holding cell. There is nothing in the record, and indeed Istvanik points to nothing, that suggests that Istvanik complained to Rogge after being double-cuffed and that the officer then ignored the complaints.

Istvanik also challenges the district court's comment that "[a]lthough he may have been in discomfort, he was only in discomfort because of his persistent refusal to comply with the officer's instructions." App. at 37. Istvanik argues that the district court substituted its version of the facts for the jury's in making this statement because there was expert testimony that his alleged injuries resulted from the double-handcuffing; not his behavior. However, as Rogge aptly says, Istvanik's argument "is a bit like saying that 'it's not the fall that kills you, it's the sudden stop at the end.'" Rogge's Br. at 17. The district court's statement merely recognizes that the cuffing would not have been necessary if Istvanik had cooperated.

Istvanik also argues that it was an abuse of discretion for the district court to note that his blood alcohol level at the time of his arrest was 0.16%. This determination was reached through a Preliminary Breath Test, but it was the focus of a motion *in limine* that

8

successfully kept it from the jury.    Again, the reference to the blood alcohol level is taken out of context.    The district court discussed all of the evidence of Istvanik's inebriation. The reference to his blood alcohol level was but one small piece of support for the undisputed fact that Istvanik was inebriated at the time of his arrest.  *See* App. at 34.  That reference to the inadmissible blood alcohol level clearly does not create reversible error. *See Plummer v. Western Int'l Hotels Co.*, 656 F.3d 502, 505 (9th Cir. 1981) ("The trial court's reliance on inadmissible evidence will not ordinarily be a ground for reversal if there was competent evidence received sufficient to support the findings.").

Moreover, the issue before the district court was whether, under the circumstances, it had clearly been established that tight handcuffing was a Fourth Amendment violation. This was a purely legal question focusing on the state of the law at the time of Istvanik's arrest.    Thus, even if we assume that Istvanik is correct that the district court substituted its version of the facts for the jury's in the three instances he cites, the district court's purported error would not in any way alter the results of the district court's survey of the relevant case law.

Finally, Istvanik claims that the trial judge was biased against him and that this bias is evidenced by the trial judge's evaluation of the facts and the "tone" of the memorandum opinion. Istvanik's Br. at 24.    In Istvanik's view, the trial judge was biased because "the trial judge clearly disagreed with the jury's verdict finding that [Rogge] used excessive force." *Id*.   However, the trial judge merely held that the jury's finding that Rogge used excessive force satisfied the first prong of the *Saucier* analysis and we therefore find no basis for

9

Istvanik's claim of judicial bias.

## III.

For all of the above reasons, we will affirm the district court's grant of judgment as a matter of law to Rogge.[8]

---

[8]Rogge has filed a cross-appeal arguing that should we find that *Saucier* does not apply, or if it does, that the district court's *Saucier* analysis was incorrect, that the district court's grant of judgment as a matter of law in his favor should be affirmed on the grounds that the Fourteenth Amendment's "shocks the conscience" test should have been applied. But, since we have found that *Saucier* does apply and that the district court's *Saucier* analysis was correct, Rogge's cross-appeal will be dismissed as moot.